MILES N. LEE, APPELLANT, V. CHARLES P. HILDEBRAND, APPELLEE.

FILED MAY 2, 1930. No. 27079.

*Miles N. Lee, Sullivan & Wilson* and *George W. France,* for appellant.

*W. L. Kirkpatrick* and *Good, Kirkpatrick & Dougherty, contra.*

Heard before GOSS, C. J., ROSE, DEAN, GOOD, EBERLY and DAY, JJ., and MESSMORE, District Judge.

MESSMORE, District Judge.

This action was brought by appellant in the district court for York county to recover on a promissory note. His petition was in the usual form and prayed judgment against appellee for $2,427.24, with interest thereon at .10 per cent. from August 21, 1925.

Appellee's answer admitted the giving and delivery of the note, alleged the same was given without consideration and that he received no value therefor; further, the note

never was a valid and enforceable asset of the Farmers State Bank of Erickson and appellant was not the holder thereof in due course; that in the autumn of 1920 the bank owned and carried among its current assets two notes made by R. E. Coe and Harry L. Patchen in the aggregate of about $2,000, secured by a chattel mortgage upon certain pop-corn; that Coe and Patchen delivered said corn to the bank in good condition in the fall and winter of 1920 and 1921, and said corn was of the reasonable market value of approximately $3,000; that said corn was kept by the bank until it was finally disposed of; that in November, 1921, the corn still remained in the possession and control of the bank, which still had among its assets the notes of Coe and Patchen which were overdue and unpaid; that the bank, desiring to close out its transactions with these men, agreed with them whereby the bank was to surrender to them their notes and they were to deliver and turn over to the bank said corn as its own property; further, the bank, being desirous of replacing and substituting in its current assets other paper in an amount equal to the Coe and Patchen notes and accumulated interest, persuaded appellee to give his original note, at that time representing to him that his note was merely a funding of values, that he would never have to pay the note, and the bank would in a short time sell said corn and retire his note from the proceeds of the sale thereof; that appellee had never seen said corn, and the bank represented to him, on the giving of each renewal note, that the corn was ample in quality, quantity and condition to satisfy the renewal notes appellee made from time to time, and that he relied on the representations so made to him; that the bank never made a demand on him for the payment of the original note nor any of the renewals thereof; that the security therefor was liquidated by the bank, the corn having been fed to swine, the swine sold, and the proceeds from the sale thereof in the sum of $655.27 indorsed on said note, all of which was without appellee's knowledge; that the guaranty fund commission of Nebraska took charge and control of said bank in January, 1926, and

made no demand on appellee for the payment of the note in question.

Appellant's reply admitted that appellee made, executed and delivered to said bank his promissory note on or about November 21, 1921; admitted that R. E. Coe and Harry L. Patchen were indebted to the bank, as set forth in appellee's answer, and that they transferred their title and interest in said corn to the bank; that appellee executed and delivered his note to the bank in an amount equal to the principal and interest of the notes of Coe and Patchen; admitted that the bank fed said corn to swine, sold the same, and the proceeds from the sale thereof in the sum of $655.27 were credited on appellee's note. Appellant denied each and every allegation of fact in appellee's answer; denied the existence of the alleged agreement; plead the illegality thereof and an estoppel to assert the same, if made; denied appellee was an accommodation maker and that the note was given for a funding of values; set out the renewals of the original note made by appellee, the appointment of a receiver for the bank, and the sale of appellee's note to appellant by said receiver, and that said note was carried as an asset of the bank.

On the trial of the action, at the close thereof, the trial judge directed a verdict for appellee, from which ruling appellant appeals.

The evidence adduced at the trial shows the note sued upon to be a fifth renewal of the original note given by appellee to said bank and differs therefrom only as to the amount and date; that the president of the bank, Mr. Doran, obtained from appellee, his son-in-law, the original note on November 21, 1921, and at that time had a conversation with appellee as follows: "The conversation was this, that the Farmers State Bank at that time owned 1,500 bushels of pop-corn that they couldn't carry in the pouches of the bank, and he said that the price of pop-corn at that particular time wasn't very good, and they were holding the pop-corn for a higher market, and he asked me if I would sign my note for this amount that the bank had in the pop-

corn at that time, with the understanding that they would sell the pop-corn and cancel the note; and that's what I did."

It appears that Coe and Patchen each owed the bank on their separate notes, and the collateral for said notes was certain pop-corn; that the bank was examined on August 14, 1921, and a recommendation made that the Coe and Patchen notes must be liquidated; Coe and Patchen each later signed a waiver, assigning their title and interest in said corn to the bank; said notes were carried as assets of the bank on December 7, 1921, when the bank was examined, and on February 4, 1922, the Coe and Patchen notes were charged off the books as assets of the bank and appellee's note went into the bank at that time in the exact amount of the Coe and Patchen notes, with interest added.

Mr. Boyle, cashier of the bank, testified that Mr. Doran brought appellee's note with him when he came up on one of his trips to Erickson and said we could place it in the assets of the bank for this corn that we have taken over from these parties. He further testified he knew the note was given by appellee for the accommodation of the bank, and Mr. Doran said he preferred putting in the note for the corn rather than carrying it as an item of property the same as they carried real estate on the bank's books.

Mr. Jones, who succeeded Boyle as cashier of the bank, testified that appellee's note was carried as an asset of the bank.

There is evidence to the effect that the corn in question was fed to swine owned by the bank, the swine sold, and the proceeds from the sale thereof in the sum of $655.27 were indorsed on appellee's note. Appellee denied knowledge of this fact.

Witness P. D. Marshall, chief of the bureau of banking of the department of trade and commerce, whose deposition was read in evidence, testified that he examined the bank on May 4, 1925, and reported as follows: "C. P. Hildebrand $2,806.07. Accommodation note. Represents chattels, mostly corn, now being fed to hogs. Equity over expense

about $500. Balance $2,306.07 loss." He examined the bank again on January 6, 1926, and reported as follows: "C. P. Hildebrand, York, Druggist, $2,151.70. Accommodation note given for chattels, now sold." Again, on January 25, 1926, in an inventory filed by this witness with the banking department he reported as follows: "Number 6789, 7-22-24, C. P. Hildebrand $2,151.70. Accommodation note for bank." Mr. Marshall further testified that he received this information from the officers of the bank.

On February 1, 1927, a receiver was appointed for the bank and on August 7, 1928, appellant purchased appellee's note and other notes, mortgages, etc., of the bank at a judicial sale, said note at that time being more than one year past due.

The evidence further shows that appellant had a conversation with appellee to the effect that appellee's note went into the bank in place of the Coe and Patchen notes and to take up the same because the banking department objected to said notes. This conversation is denied by appellee.

It was further shown as to the condition of the bank and its indebtedness to a bank in York, Nebraska, of which Mr. Doran was president and the appellee a director. Appellant contends that appellee knew of the condition of the bank, that he was a stockholder therein and paid a stock assessment in 1923, that he was a director in the bank at York and knew the Erickson bank owed the York bank considerable money; that he was related to Mr. Doran, president of the Erickson bank, as son-in-law; that he received a consideration for the giving of his original note in that the bank was kept open and he escaped an assessment upon his stock, and that his note, having been taken as an asset of the bank, satisfied the banking department and gave notice to depositors and creditors of the bank that it was there as such an asset.

The first question to determine is whether or not appellee was an accommodation maker. "One to be an accommodation maker of a promissory note must not receive any benefit or consideration directly or indirectly by way of

the transaction of which the note was a part, and the transaction must be one primarily for the benefit of the payee." *Farmers Nat. Bank v. Ohman,* 112 Neb. 491.

There is no evidence that appellee knew, at the time the note was given, that the assets of the bank were depleted, or that appellee had knowledge of any difficulties of the bank, or appellee was connected in any way with the continued existence of the bank or was responsible therefor, or that the bank would be closed if the Coe and Patchen notes were charged off, or that appellee acquired any right or interest in the Coe and Patchen paper, or that appellee agreed to put in his note to represent such paper. The very agreement was to the effect that the bank owned certain pop-corn which it could not carry in the pouches of the bank, that appellee's note was put in the bank for the value of this corn, and an agreement made with him that when the corn was sold his note would be paid. The bank gave up nothing of value; it owned the corn in question; and appellee received nothing of value. The Coe and Patchen notes were charged off, but the bank still had an adequate remedy at law as against these notes. The evidence does not show that appellee had knowledge of any kind or nature that his note was to be a substitute note for the Coe and Patchen paper.

The evidence does show the examiner declared appellee's note to be an accommodation note. There was objection to this testimony on the theory that the examiner had not actual knowledge and on the theory of hearsay. It must be conceded that the examiner is charged with a certain duty to examine the bank and report the condition thereof and his findings are competent evidence. This note was listed as being unenforceable and an accommodation instrument for the accommodation of the bank. It is clear under the evidence that appellee did not receive any benefit or consideration for the giving of this note, either directly or indirectly, by way of this transaction, and that the transaction was primarily for the benefit of the bank, the payee. Appellee was an accommodation maker.

The next important assignment of error is the admissibility of parol testimony. This refers to the conversation between Mr. Doran and appellee which was admitted in evidence and which has heretofore been set out. It might be stated that upon each renewal of the original note made by appellee the appellee inquired as to why the corn had not been sold, and it was represented to him each time that the value of the corn was not sufficient at that time to sell it and the bank was holding it for a better market, and appellee each time thereupon renewed the note. Appellant's objection goes to the proposition that this conversation varies or contradicts the terms of a written instrument. In *Empson v. Richter,* 113 Neb. 706, the defendant Essie E. Davis was permitted to testify to a promise made to her at the time she gave her accommodation note to the bank that she would not have to pay the note. In *Spangenberg v. Losey,* 116 Neb. 112, parol testimony was admitted permitting defendants to testify, in substance, that the note was without consideration for the accommodation of plaintiff and for no other purpose. Parol evidence is admissible to prove that the note was given without consideration as accommodation paper and for a special purpose. The parol evidence admitted in the case at bar goes to this very proposition and is admissible.

The next assignment of error important in this case is based upon that portion of the negotiable instruments act, section 4640, Comp. St. 1922, wherein it is stated: "Such a person is liable (speaking of an accommodation maker) on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party."

In the case at bar appellant did not purchase appellee's note in due course, but did purchase it at a judicial sale from the receiver of the bank, when it was about a year past due, for value. While the provision of the statute cited takes away the defense as against a holder for value that he took the instrument with knowledge that it was accommodation paper and therefore without consideration, it does

not take away other defenses. In this case appellee gave his note to the bank as an accommodation maker for a specific purpose, namely, for the value of said pop-corn then owned by the bank, the agreement being that the bank would cancel appellee's note when the corn was sold. This was not done. When appellee's note was sold by the receiver it was diverted from the purpose for which it was originally given. Appellant, had he examined the records, would have discovered the true status of this paper, and, had he examined the records further, he would have readily ascertained that appellee's note was an accommodation note given for a specific purpose. Appellant had means of knowing about this paper. The evidence discloses that he was a lawyer, 27 years of age, had talked with the officers of the state banking department with reference to the assets of failed banks, and this was a second purchase of assets of a failed bank that he had made. This should have put him on inquiry and amounts to notice. It would then be his duty to exercise ordinary intelligence and understanding and examine the records, which he had an opportunity to do at the banking department. The general rule that whatever puts a party on inquiry amounts, in judgment of law, to notice, provided the inquiry becomes the duty and would lead to a knowledge of the facts by the exercise of ordinary intelligence and understanding, applies to this case. With this in mind appellant had knowledge that appellee's note was diverted from the purpose for which it was given and he cannot maintain an action against appellee thereon.

In reference to that part of the testimony relating to the conversation appellant testified he had with appellee to the effect that appellee's note was given in substitution for the Coe and Patchen notes, which had to be liquidated because the banking department insisted upon a substitution of better paper therefor, and appellee's denial of that conversation, we deem such a conversation a conflict in the evidence, which would be insufficient, upon a question of fact for the jury to determine. It is immaterial whether

this conversation was had or not. The fact remains that the note was given by appellee as an accommodation note for a specific purpose and diverted from the purpose for which it was originally given.

The trial court did not err in directing the jury to return a verdict in favor of appellee. The questions arising during the trial were purely questions of law for the court to decide and justified a directed verdict in appellee's favor. From a consideration of the admissions in the respective pleadings, together with the evidence and the law governing each and every question presented, we deem it unnecessary to consider and find nothing in the other assignments of error advanced by appellant which would present a conflict of evidence upon questions of fact for the jury to determine. The judgment of the trial court in directing a verdict for appellee is sustained by the law and warranted by the evidence and should be and is in all things

AFFIRMED.