FIRST TRUST COMPANY OF LINCOLN, TRUSTEE, APPELLANT,
v. CARL R. ANDERSON ET AL., APPELLEES.

281 N. W. 796

FILED OCTOBER 21, 1938.   No. 30376.

*Waring & Waring,* for appellant.

*August C. Krebs* and *R. A. Boehmer, contra.*

Heard before ROSE, C. J., EBERLY, PAINE, CARTER and MESSMORE, JJ.

MESSMORE, J.

On December 1, 1937, the district court for Clay county entered an order on a hearing upon the application of the plaintiff for a deficiency judgment and objections thereto filed by Carl R. Anderson and Mabel O. Anderson, defendants. The court found that no liability existed on the part of the defendants Anderson, or either of them, for a deficiency judgment, and denied and dismissed the application, to which plaintiff excepted. The court overruled the motion for a new trial, and plaintiff appeals to this court.

All of the proceedings relative to the foreclosure of the mortgage as against defendants in this action, the confirmation of the sale, and the application for a deficiency judgment in the sum of $5,326.40, have been examined and found regular in form. The pertinent facts in this case may be summarized as follows:

On February 8, 1931, defendants Carl R. and Mabel O. Anderson, Rose Ruby Wells and William R. Wells executed several notes, totaling $9,000, the mortgage being executed at the same time. Before these notes and mortgage were signed, Carl R. Anderson held title to 155 acres of land in Clay county, subject to a mortgage of $9,500, due the plaintiff, and made application for a renewal of that mortgage by paying $500 on the 9,500-dollar notes, and adding 12 acres

of land as additional security for the new mortgage. In January, 1931, while such application was pending and before the notes were signed, the land covered by the mortgage was traded to Rose Ruby Wells, who assumed and agreed to pay the mortgage of $9,000. This trade involved the transfer of 167 acres of land, subject to the 9,000-dollar mortgage, for 80 acres of land, free of encumbrance, to go to defendant Carl R. Anderson. The deed was not signed or recorded until some time after the date of the mortgage, Rose Ruby Wells obtaining the deed on March 12, 1931. The coupon notes on the mortgage were not signed by defendants Anderson, but Rose Ruby and William R. Wells signed the notes with the Andersons. Rose and William Wells agreed to take over the application of Anderson; the agent for the Lincoln Trust Company suggesting this procedure. The reason for so doing was to save the expense of a new publication, and a commission of $135 was paid by Wells. The plaintiff in this action is successor-trustee of the original mortgagee.

The principal question raised in this appeal is whether or not oral testimony of an agreement, had between defendants Anderson and the agent of the original mortgagee at the time of the execution of the promissory notes, was admissible in evidence, or whether such oral testimony was an attempt on the part of defendants Anderson to vary and contradict the terms of a written instrument. The court admitted the oral testimony, which is shown by the evidence as follows:

Carl R. Anderson, in answer to question 26, stated: "He said it would be all right for us to sign those and they would hold Mr. Wells and Rose Ruby Wells as the parties to pay this mortgage; that the security they had, they were satisfied with the security; and we would not be held responsible." The evidence of William R. Wells develops that when the interest became due on the note the time was extended by the Lincoln Trust Company, the extension agreement being signed by defendants Wells. The evidence does not show that defendants Anderson knew of the extension agreement.

The court propounded the following question to the witness William R. Wells: "Q. How did it come that you and your wife and Mr. Anderson and his wife all signed the note and mortgage? A. We talked to Mr. Anderson about that at the time and he said he had this signed up. We never dealt with him at all after this old mortgage was out. And at the time he made his application for a new mortgage they told him he would have to pay $500 off. The reason I happen to know this is because when we took it over he wanted us to pay the $500, and I said, 'No.' Why we dealt for the, the other mortgage, was because we objected to signing the coupons with their names on and the mortgage too. And he said we would save a lot of time by signing it that way and that he was under no obligation by leaving his or his wife's name on there. That's the way I got it. That's the way it was explained to me at the time; because we never took this loan over until—I imagine it was about a month after this loan was due and all the papers were all fixed all ready to send in for Mr. Anderson and we kept it because that was on another land deal up until a few days before this and this is what went through. Q. When it was done was it your understanding that this was a mortgage of your wife and yourself, that is, the debt, and not the debt of the Andersons? A. That's the way—that's the way they explained it to us. We didn't think because their names were on there that they were under any responsibility whatever." Plaintiff's counsel then resumed: "Q. This explanation you are talking about, when was that made? A. That was made when we signed the coupons. Q. When you signed these papers? A. Yes. Q. And at that time Anderson and his wife had already signed? A. I wouldn't say as to that, whether they signed then. We were all at the bank at the same time." The evidence further discloses that defendants Anderson received no notice from the plaintiff, or from the Lincoln Safe Deposit Company, or the Lincoln Trust Company, of any delinquency or any obligation under this mortgage.

The appellant contends that the notes signed by defend-

ants Anderson are a complete contract in themselves and cannot be varied by parol evidence, citing in support of such contention *Farmers Nat. Bank v. Ohman,* 112 Neb. 491, 199 N. W. 802. In the latter case the defendants relied upon an alleged oral agreement, entered into between themselves and the president and cashier of the plaintiff bank, to the effect that the mother, one of the defendants, would not be called upon to pay the note; that it was to be used solely for the purpose of satisfying the demands of the bank examiner. It was said in the opinion (p. 498) : "The note is a complete contract in itself, and its terms cannot be varied or contradicted by extraneous parol evidence," citing cases; and further : "The fact is that no communication, oral or written, ever passed" between the president, or the cashier, or the bank "and the mother prior to her signing the new note, or in reference to it. * * * Furthermore," the cashier and president "could not bind the bank to such an agreement, which, if made by them, was clearly outside the scope of their authority."

A different situation arose in that case than in the case at bar, and the facts are not similar or analogous. In the instant case and cases of a similar nature, this court has admitted testimony to show the real purpose by which a promissory note was executed, when such note was sued on by the payee named in the note, and in the instant case the trust company stands in the same relation as the original payee by virtue of the bankruptcy proceedings of the original payee and the appointment of the First Trust Company as trustee to carry on the business of the bankrupt payee.

In *Davis v. Sterns,* 85 Neb. 121, 122 N. W. 672, this court held: "It is not error to submit oral testimony to the jury to show the purpose for which a negotiable promissory note was executed, where such note is sued on by the payee named in the note." The above holding was followed and quoted in *Spangenberg v. Losey,* 116 Neb. 112, 216 N. W. 191, wherein other cases were cited which hold to like effect.

In the instant case defendants Anderson signed the notes on the promise and agreement of the agent of the plaintiff

that they would not be held responsible on said notes, and the notes were signed as an accommodation to the payee, to expedite the business, and to save the publication of a new loan.

The case of *Security Savings Bank v. Rhodes,* 107 Neb. 223, 185 N. W. 421, which appellant quotes in its brief, is distinguished. In that case the party agreeing to pay the note was not a signer of the note, and the payee was not a party to the oral agreement, as in the case at bar. We believe that the signatures of the Andersons on the notes in question constituted an accommodation, under the definition of "accommodation paper," and that the evidence clearly shows that this is not an obligation of Anderson; that the Lincoln Safe Deposit Company was a party to the transaction, and that it took place before the notes were signed; that it was understood and agreed that it was the obligation of Wells, who undertook to assume the mortgage and even signed the notes, to show his liability for the debt.

In *Lee v. Hildebrand,* 119 Neb. 717, 230 N. W. 673, we held: "One to be an accommodation maker of a promissory note must not receive any benefit or consideration directly or indirectly by way of the transaction of which the note was a part, and the transaction must be one primarily for the benefit of the payee." Anderson was, under the facts in the instant case, an accommodation maker.

In the case of *Empson v. Richter,* 113 Neb. 706, 204 N. W. 518, it was held: "An accommodation maker of a promissory note is not liable to the party accommodated," which holding is followed in the case of *Willis v. Sponsler,* 117 Neb. 1, 219 N. W. 581.

Other propositions of law urged by appellant to obtain a reversal are not, in view of our holding, necessary to a determination of this case.

The order of the trial court denying a deficiency judgment against defendants Anderson is

AFFIRMED.