DANIEL O'HANLON ET AL., APPELLANTS, V. JAMES M. BARRY, APPELLEE.

FILED SEPTEMBER 26, 1910. No. 16,122.

Parol Evidence: VARYING EFFECT OF DEED. Where it is sought to vary the effect of a deed of conveyance by parol testimony so as to declare it to be a mortgage, the evidence must be clear, convincing, and satisfactory in its nature in order to warrant a court to grant the relief prayed.

O'Hanlon v. Barry.

APPEAL from the district court for Dakota county: GUY T. GRAVES, JUDGE. *Affirmed.*

*J. J. McAllister* and *John V. Pearson,* for appellants.

*R. E. Evans* and *Paul Pizey, contra.*

LETTON, J.

In 1903 the plaintiff, Daniel O'Hanlon, purchased of one Gerald Dillon 74 acres of land in Dakota county for the sum of $5,000. He paid no money, but gave a note and mortgage for the entire purchase price. The interest not having been paid when due, Dillon instituted foreclosure proceedings, which resulted in a decree of foreclosure, and the sale of the premises to him at sheriff's sale. The sale was confirmed. O'Hanlon took preliminary steps to prosecute an appeal from the confirmation, and no deed to the purchaser was then executed. On February 12, 1906, the defendant, James M. Barry, purchased the right, title and interest of Dillon in the land for $5,400, and Dillon assigned the decree of foreclosure to Barry, and executed a deed to the land. A few nights afterwards O'Hanlon and wife joined in the execution of the deed made by Dillon to Barry. This transaction took place at Barry's residence. Barry and O'Hanlon had dealt with each other frequently before this. On March 30 Barry made a written lease to O'Hanlon for the premises until December, 1906, for a cash rent, and at the expiration of the respective terms like leases were made for two succeeding years. The O'Hanlons were in possession of the land as their homestead at the time of the conveyance to Barry and have been in possession of it ever since. In June, 1906, no appeal having been perfected from the order of confirmation, a deed was executed by the sheriff to Dillon, and delivered to Barry, who caused the same to be recorded. Afterwards Dillon, without the knowledge or consent of Barry, made and delivered to Mrs. O'Hanlon a quitclaim deed to the land, which was afterwards recorded. Dillon died soon after, and before the trial. The

plaintiffs assert that before the transaction between Barry and Dillon whereby Barry purchased Dillon's interest in the land, Barry had agreed with them that he would advance the money to pay off the mortgage debt and costs, and would hold the land as security until they were able to pay the judgment, and that the deed executed by them at Barry's house was in fact a mortgage, and was executed upon condition that as soon as they paid the amount advanced by Barry the land should be conveyed to them. Barry, on the other hand, maintains that he purchased from Dillon for his own benefit exclusively, and that no agreement was ever made by which he promised to reconvey the premises to the O'Hanlons upon any condition whatever. From this controversy disputes as to the possession arose, and several actions were begun in the district court for Dakota county respecting the title, possession, and right to the crops upon the land. The present action was begun by O'Hanlon to declare the deed to be a mortgage and to be allowed to redeem. These actions were finally consolidated and tried as one case. The district court found for the defendant Barry, quieted his title in the premises, awarded possession to him, and, pending this appeal, appointed a receiver for the rents and profits. From this decree the O'Hanlons have appealed.

The bill of exceptions consists of nearly 600 typewritten pages. Much of the testimony is entirely irrelevant to the main issue in the case. It is impossible within the limits of this opinion to review the same at length or to do more than briefly set forth the grain of wheat which the writer has laboriously winnowed from the pile of chaff contained in the record.

One of the principal factors in the case is the determination of what actually took place at the time of the execution of the deed by the O'Hanlons at Barry's house. As to this there is a direct and positive conflict in the testimony. Mr. and Mrs. O'Hanlon testify that they went there in response to a request by Barry made in Dakota city on the day he closed the transaction with Dillon; that

when they first went to the house there were present in the sitting room only Barry and Mr. and Mrs. O'Hanlon; that in the conversation prior to the execution of the deed they asked Barry for a written contract that he would return the land when the money was paid to him that he had paid to Dillon, but that Barry said he would give no contract, that his word was better than a contract, and that whenever the O'Hanlons were able to pay they would have the land back; that O'Hanlon signed the deed; that Barry then called his son James, who was in the kitchen, and sent him for his uncle, Thomas Brennan, who was a notary public and who lived nearby, and that shortly afterwards Brennan came into the room. Mrs. O'Hanlon testifies: "I said I wouldn't sign the deed without a contract. He said his word is better than any contract. He says, 'I am superior to any contract. What I say I will do. When you pay me this mortgage money, or this money for the judgment'—he says, 'when you pay me this judgment, I will turn you back your deed,' and he had turned to Mr. Brennan and he says, 'If you don't believe what I say, here is Mr. Brennan, I want him to witness what I say—when you pay me up my money, I will turn you back your deed.' " They further say that Barry told them to come back in a few days and he would make them a lease of the land. Brennan testifies that he went to the house with James Barry, that he was not sure whether O'Hanlon had signed the deed or not before he went into the room, but that Mrs. O'Hanlon signed it when he was there. He further says: "When I asked her about the signature, she said, 'We sign it with the understanding if the judgment is paid we get the land back.' " He testifies that when he went into the house Amelia Anderson and Mr. Sullivan were in the kitchen, and there might have been others of the family. Brennan is a brother of Mrs. Barry.

On the other hand, Mr. and Mrs. Barry and Thomas Sullivan, a neighbor, who appears to be a man of some standing and repute in the county, and who seems to have no interest in the controversy, all testify that they were

present in the room during the whole conversation between Barry and the O'Hanlons, were there when the deed was signed, and when Brennan took the acknowledgment, and each swears positively that no such conversation took place. There is circumstantial and collateral evidence in the record which, if unexplained, would tend to corroborate the evidence of Mr. and Mrs. O'Hanlon; but, if the testimony of Barry and others is believed, these facts equally support another hypothesis. Furthermore, a number of witnesses testify to statements made by O'Hanlon at various times and places that Barry owned the land. The conduct of the O'Hanlons with respect to the payment of rent and the making of improvements also seems inconsistent with the idea of ownership on their part. It is shown that Barry employed men to cut weeds on the farm and that he procured hundreds of loads of manure to be hauled upon the premises from his own land.

The matter is not free from doubt. It may be possible that the district court erred in finding for the defendant. The trial judge had the advantage of seeing the witnesses and hearing them testify, which is an advantage this court is deprived of. It is difficult to say from the cold typewritten page which witnesses were telling the truth. We have repeatedly said that where it is sought to establish by parol that an absolute deed was only intended as a mortgage or given as security, the evidence must be clear, convincing and satisfactory. *Deroin v. Jennings,* 4 Neb. 97; *Schade & Schade v. Bessinger,* 3 Neb. 140; *Stall v. Jones,* 47 Neb. 706; *Butler v. Peterson,* 79 Neb. 715. Weighing the whole testimony, we are convinced that the trial court was warranted in holding that the evidence was not sufficient to decree that the deed was only intended as a mortgage, and in granting the relief prayed.

For these reasons, the judgment of the district court is

AFFIRMED.