HARTLEY K. ANDERSON, APPELLANT, V. LINCOLN JOINT STOCK LAND BANK, APPELLEE.

FILED MAY 29, 1936. No. 29598.

*Charles E. Matson,* for appellant.

*Good, Good & Kirkpatrick* and *Mark Simons, contra.*

Heard before GOOD, EBERLY and CARTER, JJ., and CLEMENTS and THOMSEN, District Judges.

CLEMENTS, District Judge.

This action was brought by Hartley K. Anderson, a widower, and his children, plaintiffs, to enforce specific performance of an alleged verbal agreement for reconveyance to them of the southeast quarter of section 24, township 9, range 6, Lancaster county, Nebraska. Trial was had before Honorable J. H. Broady, district judge, resulting in a general finding for defendant and a dismissal of the action. Plaintiff brings the cause here on appeal.

On February 5, 1923, the plaintiff, Hartley K. Anderson, and his wife, then living, Kathryne Anderson, executed and delivered to the defendant a mortgage in the principal sum of $14,800 on the above described land. At the time of the execution of the mortgage, Hartley K. Anderson and his wife Kathryne were the owners of the real estate, each owning an undivided half interest in the same. On February 5, 1931, Kathryne Anderson died intestate leaving as her sole and only heirs Hartley K. Anderson, her husband, Lyle Francis Anderson, a son, Margaret Agnes Anderson, a daughter, Milton Hartley Anderson, a son, Geralyn Etta Anderson, a daughter, and Reese Lee Anderson, a son.

The interest on the mortgage indebtedness was not paid in accordance with the terms of the mortgage and April 19, 1933, the amount due and unpaid on the mortgage was approximately $16,000. For about $900 of this sum, being

delinquent interest on the mortgage, defendant had taken plaintiff Hartley K. Anderson's chattel mortgage on 2,000 bushels of corn.

On said 19th day of April, 1933, negotiations were commenced between Hartley K. Anderson and the defendant which resulted in the execution and delivery by the plaintiff to the defendant of a warranty deed conveying to the defendant his interest in said premises, the execution of a lease of the premises to the plaintiff, the release of the above mentioned chattel mortgage by the defendant, and an agreement between the parties for an option by the terms of which the defendant was to reconvey said premises to the plaintiff under certain terms and conditions. What the nature and conditions of this option were is the only matter in dispute in this action.

After the delivery of deed by plaintiff, Hartley K. Anderson, to it, the defendant commenced a foreclosure action on said mortgage against the children, heirs at law of Kathryne Anderson, deceased, which action resulted in a sale of the premises to the defendant. The plaintiffs allege in their petition that, under the terms of the option entered into April 19, 1933, Hartley K. Anderson was to have a reconveyance of said premises if he paid to the defendant on or before March 1, 1934, the sum of $9,500; that on December 23, 1933, he advised the defendant that he had secured the approval of a $12,000 loan from the Federal Land Bank, and when the money from this source was available $9,500 would be paid to the defendant pursuant to said option agreement; that the defendant refused to reconvey said premises on receipt of said sum. The plaintiff, Hartley K. Anderson, offers to pay said sum of $9,500 into court for the defendant, and asks that the defendant be decreed by the court to reconvey said premises to said Hartley K. Anderson, free and clear of all encumbrance, except the taxes for 1933 and 1934.

The defendant answers that, under the agreement of April 19, 1933, it was to reconvey said premises only on condition that said Hartley K. Anderson on or before

January 1, 1934, pay all delinquencies on said mortgage, including taxes and insurance premiums, and that said reconveyance was to be made subject to the lien of the principal sum of said mortgage; that such delinquencies were never paid.

As there is no dispute as to any facts in this case, save as to the terms and conditions of the alleged agreement to reconvey, we will examine and comment only on such evidence as bears upon such facts.

The evidence of plaintiff in support of his contention consists of the testimony of himself and of his son Lyle Francis Anderson, and a cousin of the plaintiff Hartley K. Anderson, by the name of George M. Christian. The plaintiff, Hartley K. Anderson, testified that on or about April 19, 1933, the defendant was pressing him for payment of the mortgage; that on that day, a Mr. Thomas, who was a collector for the defendant, came to the Hartley K. Anderson farm and told said plaintiff that the loan had run a long time and something had to be done; that Thomas advised plaintiff, Hartley K. Anderson, to make out a deed to defendant, that it would be the easiest way out. He offered to give me an option that I could redeem my place for $9,500 any time up to March 1, 1934. The reason he gave why they would take $9,500 was that their bonds were low and they could go out and buy bonds with that money. I agreed that I would come in that afternoon. When I got to defendant's place of business, they had the papers fixed out and I signed the deed and lease. They gave me no written option, but said they would send me one. I never got a written option, but Mr. Thomas, as I was leaving, said, any time I could get hold of $9,500 they would turn the deed back to me. In this testimony he was corroborated by his son Lyle who was present at the conversation held at the farm and went with his father to the defendant's place of business when the papers were signed.

George M. Christian testified that he had several conversations with William E. Barkley, the president and

general manager of the defendant bank. In one of these conversations, had in January, 1934, he told Mr. Barkley that he, the witness, understood that Mr. Anderson had an option to repurchase the land for $9,500, that Anderson could secure a loan from the Federal Land Bank for $12,000 and was prepared to pay $9,500 for reconveyance of his land. Mr. Barkley said they would not accept $9,500, that bonds had gone up so much higher than they were at that time. In another conversation with Mr. Barkley, held on or about the 24th day of January, 1934, the witness testified that Mr. Barkley again said he would not accept $9,500 in settlement, that bonds had gone up to such an extent that $12,000 would not be as much as $9,500 when they talked settlement the first time. The witness then said he told Barkley he, Mr. Anderson, cannot afford to hire attorneys and go to law. He will give you the entire proceeds of the $12,000 loan. Mr. Barkley said, I believe you can get a better loan than that. I told him I thought not. He said: "Well, you go back there and write them and see what you can do. No hurry about this, we will let this thing ride and will try to work it out." The witness then testified that Mr. Barkley suggested what he should write to the finance corporation, and that at Barkley's suggestion he wrote the letter—plaintiff's exhibit No. 2. We will comment on this letter later. It was shown by the witness that in April, 1933, the bonds of the Lincoln Joint Stock Land Bank were valued at 50 cents on the dollar.

On the part of the defendant, the following witnesses were called and testified: William E. Barkley, president of defendant bank; Harry N. Thomas and R. F. Reynolds, collectors for defendant; Fred M. Deweese, attorney for defendant; J. C. Price, in charge of defendant's real estate department; Mrs. Eunice Dingman Gleason, formerly Eunice Dingman, stenographer for defendant, and Miss Klara Hanneman, secretary for the defendant.

William E. Barkley testified that he had never agreed to accept $9,500 in payment of the Anderson loan, nor had

he ever authorized any other person to compromise. said loan for that amount; that on March 21, 1933, he authorized Mr. Reynolds to settle the Anderson loan for $11,000, if all cash was paid by April 1, 1933. He admits having a talk with Mr. Christian in which he told Christian that the bank would not reconvey the Anderson land upon payment of $9,500 and that he urged Christian to write the Federal Land Bank in an endeavor to procure a larger loan than $12,000. He denies he made any suggestions as to the language to be used in said letter. He admits the bonds of the bank were low in 1933 and increased in value during that year, and that the bank could have given Anderson a larger discount on his loan in April, 1933, than in January, 1934. That part of exhibit No. 2 which is material to the issues in this case is as follows:

"The Lincoln Joint Stock Land Bank of Lincoln, Nebraska, holds the present loan on my farm. Their loan plus taxes amounts to approximately $16,000 and although I can get a small discount on the same, I cannot get the discount that some others are getting for the reason that my farm is so well situated and in a high state of cultivation that others are trying to purchase the same, consequently the land bank will not consider much of a loss. The land bank has already foreclosed on this land, but are giving me a reasonable amount of time to get it financed so that anything that is done will have to be done at once."

Harry N. Thomas and R. F. Reynolds were both present at the conversations held with Anderson at his farm April 19, 1933. They both testified that no option was offered or given Anderson to redeem his land for payment of $9,500 by March 1, 1934. They both testified that the transaction had that day was as follows:

In consideration of the giving by Anderson of a deed to the premises, the bank would release its chattel mortgage on 2,000 bushels of plaintiff's corn, lease the plaintiff, Hartley K. Anderson, the land for 1933, and give him an option to repurchase the land by payment, on or before January 1, 1934, of all delinquent interest and taxes, any

insurance paid by the bank, and any amount necessary to perfect the title; that Anderson said he would be in that afternoon and fix up the papers to complete the transaction; that Anderson came to the office of the defendant that afternoon; that both Thomas and Reynolds were present and took part in what transpired there; that prior to the arrival of Mr. Anderson there had been prepared a deed of the Anderson land to the bank, a lease of said land to Anderson, an option agreement, and a release of the chattel mortgage on the corn, all in accordance with the agreement of the parties in the conversation on the farm. .

On Mr. Anderson's arrival at the office, these papers were handed to him for inspection, he inspected and read them and signed the deed, lease and option. These papers were then sent to Mr. Deweese, and Anderson was told that, after the abstract had been brought down to date and examined, if the title was found good, the option and lease would be forwarded to him and the release filed. That in the conversation at this time nothing was mentioned about $9,500 being sufficient to take the land free from the mortgage. The letter transmitting these papers to Mr. Deweese, defendant's exhibit No. 10, is as follows:

"Report

"April 19, 1933.

"N-1282-C Anderson

"Attention Mr. Deweese:

"Mr. Thomas and myself called at the home of Hartley K. Anderson, who is delinquent three instalments of $444 each, and three years taxes.

"We formally arranged with him to give us a deed for the farm, and as part of the consideration we returned to him a note and mortgage on 2,000 bushels of corn. We are to give him an option to purchase this farm, expiring January 1, 1934, and have rented to him for the year 1933 for two-fifths of all grain delivered and $4 per acre for all land not cultivated, cash rent payable January 1, 1934.

"I am inclosing lease, deed, and the option which will .

be delivered to him when the title has been found satisfactory. I forgot to have an assignment of insurance, but will procure the same at an early date.

"Yours very truly,

"R. F. Reynolds."

Fred M. Deweese testified as follows: That he received the instrument mentioned in the letter, exhibit No. 10; that he had prepared the deed and option contract, the option contract being prepared in duplicate; that on examination of the title he found the land had been held jointly by Hartley K. Anderson and his wife, Kathryne Anderson; that Kathryne Anderson had died leaving heirs, and that the deed from Anderson would convey but a one-half interest in the land; that he advised that a foreclosure of the Anderson mortgage would have to be had to cut out the interest of the heirs of Kathryne Anderson; that on June 2, 1933, he wrote Anderson the letter introduced as defendant's exhibit No. 11. This letter is as follows:

"June 2, 1933.

"Mr. Hartley K. Anderson,

"Route No. 3, Lincoln, Nebraska.

"In re: Lincoln v. Anderson N-1282-C

"Dear Sir:

"The deed given by you to the land bank has been recorded and the abstract extended to show title in the land bank subject to its mortgage.

"Because your wife had an undivided one-half interest it will be necessary for the land bank to foreclose its mortgage in order to secure title to the land described in the mortgage and such a proceeding is being started. We will probably also have to have a short form of administration to establish the heirship of the children whose names you gave to Mr. Reynolds yesterday.

"You were to be released from obligation on notes given to the land bank and secured by a chattel mortgage, and I inclose your two notes dated August 3, 1932, each in the sum of $444.44 which have been canceled. These were secured by a chattel mortgage which is inclosed. A release

of this chattel mortgage is being mailed to the county clerk in Lincoln.

"You were also to have an option to purchase the land described in the mortgage at any time up to January 1, 1934, and such an option is inclosed. If you are able to take advantage of the rights given by this option you should notify the land bank a few days in advance of January 1, 1934, so that the sale may be completed by that time.

"You are also to receive a lease giving you the right to occupy the premises to March 1, 1934, and a copy of such a lease is inclosed.

"Yours very truly,

"ENC. Notes, Ch. Mtge., Option, Lease."

This letter was typed by my stenographer Miss Dingman. After signing the letter I handed it and the original option contract to Miss Dingman. Digressing here for the evidence as to the mailing of the letter, Mrs. Eunice Dingman Gleason testified, she typed the letter, exhibit No. 11; that after the original had been signed by Mr. Deweese, she folded it and put it in the envelope; that she inclosed with it, the inclosures listed at the bottom of the letter, namely, the notes, chattel mortgage, option and lease; that she was familiar with the form of option which the land bank used at that time; that the option inclosed was on a form similar to exhibit No. 12, that the option was signed; that the letter was directed to Mr. Anderson to the address on the head of the letter; that Mr. Deweese's return card was on the letter; that the letter bore three cents postage; that she put the letter in the wire mail box kept in the office for all mail going out; that was the usual routine for correspondence in the Joint Stock Land Bank.

Klara Hanneman testified that she had entire charge of the mail in the Joint Stock Land Bank; that after every one got their mail in the basket, I collected it and bound it together with a rubber band and took it to the post office; that she did this on June 2, 1933. I checked each letter

to see if it was sealed and properly stamped. If they were not properly stamped, I stamped them.

Now resuming testimony of Fred M. Deweese. He testified further that, when he prepared the letter, exhibit No. 11, on June 2, in which the original option contract was inclosed, he had the duplicate of this option contract on his desk; that it afterwards disappeared; that he had made a thorough search for it and was entirely unable to find it; that it was prepared on the blank form, exhibit No. 12, and the blanks were filled in as follows:

The third line contained the name of Hartley K. Anderson, the fourth line contained the word Lancaster, the fifth line contained the date of January 1, 1934, the seventh line was a description of the Anderson land. The second paragraph contained the amount of $14,800, the next line contained the date of February 5, 1923, followed by the words, Hartley K. Anderson. The fourth paragraph and the fourth line contained the date, January 1, 1934. The second line of the fifth paragraph contained the words, Hartley K. Anderson. The instrument was dated April 19, 1934, and was signed by W. E. Barkley.

As thus described by the witness the option reads as follows:

"Option to Purchase Real Estate.

"In consideration of One Dollar, the receipt of which is acknowledged, the undersigned grants to Hartley K. Anderson of Lancaster county, his heirs or assigns an option to purchase on or before January 1, 1934, the following described real estate:

"Southeast quarter, except one acre for school, of section 24, township 9, range 6, Lancaster county, Nebraska.

"If this option is exercised by payment as herein provided, the above described land will be conveyed by special warranty deed, subject to the unpaid balance on a mortgage of $14,800 to the undersigned, dated February 5, 1923, given by Hartley K. Anderson and wife, recorded in book 267, page 15, of the mortgage records of Lancaster county, Nebraska, which unpaid balance any assignee

of this option will assume and agree to pay if the option is exercised.

"The amount to be paid to the undersigned at the time this option is exercised shall be an amount of money equal to that which the undersigned has paid for taxes, insurance and all sums which are due to it on instalments of principal and interest on the mortgage described above, also any sum paid by the undersigned to perfect title in itself and to discharge subsequent liens plus all sums paid by the undersigned in the necessary care and maintenance of said premises, with eight per cent. interest on all amounts referred to above.

"Time is the essence of this option to buy and if the payments herein required are not made at the office of the undersigned, 200 Barkley Building, Lincoln, Nebraska, on or before January 1, 1934, all the rights herein given will end and this option will thereafter be of no force or effect.

"This option is not intended and shall not be construed to give the said Hartley K. Anderson any title or interest in the lands described herein and the title of the undersigned shall not be encumbered by the recording of this option.

"Signed this 19th day of April, 1934, at Lincoln, Nebraska.

"The Lincoln Joint Stock Land Bank
of Lincoln, Nebraska.
"W. E. Barkley, President."

The plaintiff, Hartley K. Anderson, never exercised this option and refused to pay any rental. The defendant foreclosed the mortgage as to the heirs, bought the land at the foreclosure sale and now claims title thereto free and clear of any interest of the plaintiffs.

We must now notice a claim of the plaintiffs which appears for the first time in the reply to defendant's answer. The plaintiffs plead in their petition an option to repurchase the premises by payment of $9,500 on or before March 1, 1934. In their reply they plead that the

deed was given for the purpose of furnishing the defendant with additional security, and pray in the alternative that the deed be adjudged as given as additional security for the payment of the mortgage debt. The defendant filed a motion to strike the last paragraph and alternative prayer from the reply on the ground that it was a departure and set up a new cause of action. This motion was argued and submitted but does not seem to have been passed upon by the court.

We think this motion should have been sustained. The allegation in the petition that the deed was given upon consideration to reconvey for a certain sum and the allegation of the reply that the deed was given as additional security are inconsistent and contradictory. The one presupposes the passing of the legal title by the grantor; the other, that the legal title is retained by the grantor.

"It is not allowable to plead new matter in a reply for the purpose of bringing forward a new cause of action not charged in the petition or to aid the averments of the petition." *Kliment v. Torpin Grain Co.*, 5 Neb. (Unof.) 159, 97 N. W. 587.

However, a ruling by the court was not insisted upon and the cause was tried upon both theories presented by the petition and reply.

The only facts additional to the evidence summarized above is a clause in the deed which provides, "Subject to the unpaid balance on a mortgage of $14,800 to the grantee herein, dated February 5, 1923, recorded in book 267 on page 15, the lien of which is retained and is not merged in the title," and proof that the Anderson land at the time of the transfer was of greater value than the mortgage indebtedness. We think the clause for nonmerger of the lien of the mortgage with the title is sufficiently explained by the necessity of perfecting the title by foreclosure proceedings against the heirs.

Ordinarily, when two unequal estates vest in the same person at the same time without an intervening estate, the smaller is thereupon merged in the greater, but this

result does not necessarily follow. Whether the two estates have coalesced will depend upon the facts and circumstances in the particular case, the intention of the parties acquiring the two estates, and the equities of the parties affected. *Peterborough Savings Bank v. Pierce*, 54 Neb. 712, 75 N. W. 20.

The fact that the value of the Anderson farm was in excess of the mortgage indebtedness is a circumstance of some probative force in support of plaintiffs' theory that the deed was given as additional security, but in view of the weight of the evidence and the inherent improbability of this theory, it must be disregarded. That the land bank, holding a mortgage on land worth $20,000 on which mortgage there was due in excess of $14,800 and for a part of which it held additional security in a chattel mortgage on 2,000 bushels of corn, would release this additional security and agree to accept $9,500 for the entire debt if paid within approximately a year, leaving the debtor in possession during that time, in consideration for a deed of a half interest in said land, and knowing that a foreclosure of the mortgage would be necessary to clear the title to the land from outstanding interest of heirs, cannot be believed, except upon evidence that is clear, convincing and satisfactory.

Where it is sought to vary the effect of a deed absolute on its face by parol testimony, so as to declare it to be a mortgage, the evidence must be clear, convincing, and satisfactory before a court is warranted in adjudging it to be a mortgage. *O'Hanlon v. Barry*, 87 Neb. 522, 127 N. W. 860.

The evidence in this case on the part of both plaintiffs and defendant is very voluminous. We have abstracted it as fairly as possible. The only question raised by the plaintiffs is that this evidence does not support the finding and judgment of the trial court. We think his finding and judgment is amply supported and should be sustained.

AFFIRMED.