ARTHUR E. JOHNSON, APPELLEE, V. CHARLEY L. SHULER ET AL., APPELLANTS.

277 N. W. 807

FILED FEBRUARY 18, 1938.   No. 30186.

*Frank M. Johnson,* for appellants.

*T. M. Hewitt* and *W. A. Stewart, Jr., contra.*

Heard before GOSS, C. J., EBERLY, DAY, PAINE, CARTER and MESSMORE, JJ., and YEAGER, District Judge.

MESSMORE, J.

This is an appeal from the district court for Dawson county, wherein said court found for the plaintiff and set aside a certain reconveyance agreement as constituting a cloud on plaintiff's title to land, from which decree the defendants appeal.

Plaintiff's petition alleges the ownership of a certain quarter-section of land, and an arrangement made by him with defendants whereby plaintiff released a 7,000-dollar mortgage, accepted a warranty deed from the defendants, together with a farm lease running for three years, and an optional agreement to reconvey the premises upon defendants paying the sum of $1,005.38 delinquent interest and taxes, on or before March 1, 1936, and, in the event that defendants complied with such agreement, plaintiff would carry back a mortgage on said land in the sum of $7,000. The optional agreement was filed with the register of deeds by the defendants February 11, 1936, and this action is brought for the purpose of having the optional agreement declared null and void; asking that the cloud upon plaintiff's title be thereby removed, and that plaintiff be decreed to be entitled to immediate possession of said premises.

The defendants' answer alleges a separate and distinct oral agreement, made contemporaneously with the written agreement as set out in plaintiff's petition, and alleges that defendants sought to comply with and perform their part of the oral agreement, and have an equitable interest in said premises, and in a cross-petition realleges the subject-matter as contained in the answer, details the agreement, and that plaintiff fraudulently omitted and neglected to recite in said lease and option all the terms and conditions that were agreed to by the parties on September 16, 1932, and the value of the premises involved, asks for an accounting and credit on the mortgage indebtedness on account of rents paid during the crop years 1933, 1934, and 1935, and the placing of permanent improvements on the premises in the sum of $554.20, and for other equitable relief.

The answer to the cross-petition specifically denies the oral agreement, as alleged in such cross-petition, and that rents were to be applied on the payment of the mortgage, and denies that any part of the debt of $1,005.38 has been paid. The defendants' reply to plaintiff's answer to defendants' cross-petition is a general denial.

The evidence discloses that defendant Reta Shuler is a cousin of plaintiff and the parties had always been on friendly terms; that in 1929 the plaintiff loaned defendants the sum of $7,000, they being the owners of the fee title to the southeast quarter of section 13, township 10 north, range 23 west of the 6th P. M., in Dawson county, Nebraska; that defendants failed to pay the interest and taxes, as provided in such mortgage. According to plaintiff, he wanted the delinquent taxes and interest paid, amounting to $1,005.38, and the defendants wanted to save foreclosure of the mortgage; therefore, the warranty deed, the farm lease and the repurchase agreement were entered into, the plaintiff agreeing that if said sum of $1,005.38 should be paid on or before March 1, 1936, and rent paid in the customary terms, he would reconvey the land to the defendants, and take back a 7,000-dollar mortgage thereon.

Defendants contend that on or about September 16,

1932, plaintiff and his wife came out to the residence of the defendants and they talked the matter over. They agreed, as related by defendants but denied by plaintiff, that both of the parties were to keep an account of the rents received by plaintiff under such agreement, and if at any time the rents received by him were in an amount sufficient to reimburse plaintiff for the interest and taxes then in arrears, in addition to any other sums, such as taxes, insurance or water maintenance expended by plaintiff, he would reconvey the land to defendants and give them credit on the original 7,000-dollar loan for any excess over and above what was due; that they further agreed, in the event defendants were not able to redeem, that any money expended by them in maintaining the premises, in the way of permanent improvements and upkeep other than customary expenditures as tenants, would be refunded to defendants by plaintiff, and that the defendants were to keep account of such items. Defendants also understood that they were to pay 5 per cent. interest on the mortgage at all times up to the period of redemption. The next day the parties met at the office of plaintiff's attorney, where the warranty deed was executed by defendants, the farm lease and the agreement to repurchase were signed by the plaintiff and defendant Charley L. Shuler, and the defendants received the canceled mortgage, note and release of mortgage. As to what occurred in the attorney's office, defendant Shuler stated he objected to the lease for the reason that the language therein indicated to him that the plaintiff would have a right to mortgage his (Shuler's) part of the crop and that he would not be able to transact business as he desired. This provision was changed to meet Shuler's requirements. He also stated that he objected to the language used in the reconveyance agreement because it contained no provision for the application of the rents received by plaintiff on the past-due interest and taxes, together with any other sums which might be expended by the defendants during the term of said agreement; nor did it provide for the reimbursement to defendants for

any improvements they might place on the premises in the event they were unable to redeem, but that he was satisfied, when it was explained to him, that the words "pay or cause to be paid" meant that such rents were to be credited against the amount owing on the mortgage. This was denied by plaintiff and his attorney. The warranty deed showed the consideration to be the sum of $8,005.38, and contained this provision: "This deed is given for the purpose of canceling the mortgage given by the grantors to the grantee and no cash consideration in exchange therefor." The farm lease was in the customary terms of rent, and provided that the plaintiff was to pay one-third and the defendants two-thirds of the maintenance fee for water. The repurchase agreement provided for the payment of $1,005.38 during the term of the lease and the carrying back of the 7,000-dollar mortgage, but did not designate the length of time such mortgage would be carried back, or the rate of interest it would bear.

Defendant Charley L. Shuler testified that he met plaintiff on the street in Lexington in the spring of 1935 and asked for an accounting and reconveyance of the land to the defendants in accordance with their agreement; that plaintiff stated there was no need of doing it at that time; that they might just as well let it run for another year and then have a settlement; and that plaintiff stated that defendants could rest assured that he did not desire their land. This meeting is denied by plaintiff. In the spring of 1936 defendant Charley L. Shuler again requested an accounting from the plaintiff and was told by plaintiff that he wanted the money or the premises.

During the period of the lease, the defendants paid rent in the sum of $3,896.24. The plaintiff paid the taxes and water maintenance, and, according to the books kept by the defendants, there would be a total credit to plaintiff of $1,661.74. In addition thereto, the defendants expended the sum of $554.20 for permanent improvements on the premises, and $2,234.50 should be credited to the mortgage debt, which would leave a balance of $5,770.88, for which

amount, defendants contend, the plaintiff was to carry back a mortgage. This was allowing interest at 5 per cent. on the 7,000-dollar indebtedness to March 1, 1936.

On April 30, 1933, during the course of the lease, plaintiff's wife, in reply to a letter asking that wallpaper be furnished for the house on the farm, wrote as follows: "You wrote me about the paper. Now we don't hardly consider ourselves landlords for at least three years. While we expect rent which will hardly be the interest that you would be paying and you know that we haven't had interest for two years and have paid taxes for 2 years nearly three now * * * Arthur (the plaintiff) says our personal agreement was if you put anything on the place reasonable paid for it we were to keep track of it and if you couldn't redeem the place we were to pay you and same way we were to keep our account of what we put on and you were to pay us. I know the paper can't be so very much now you can go ahead and get the paper we will pay for it that way." This letter indicates that plaintiff considered himself only a qualified owner of the premises; that he did not consider himself as landlord nor the defendants as tenants, but that the relationship of creditor and debtor existed.

The evidence further discloses that the value of the land in question at the time of the execution of the original mortgage was $10,000. At the time of the execution of the instruments in question, September 17, 1932, it was from $9,000 to $11,000, and on the date of the alleged redemption period, March 1, 1936, from $11,000 to $11,500. The only statement of value appearing in the record *contra* is by the plaintiff, that the land was not worth the amount of the mortgage on September 17, 1932. The total indebtedness was $8,005.38, on September 17, 1932. There has always been an equity in the land, and on March 1, 1936, such equity was in excess of $2,000.

In this connection we quote from *Snoke v. Beach*, 105 Neb. 127, 179 N. W. 389, wherein this court said (p. 132): "The value of the land as compared with the consideration paid for it is also an important factor to be considered in

determining the true, nature of the transaction. This of course is based upon the well-recognized trait of mankind to secure as nearly as possible a fair value for his property."

If the plaintiff should prevail, the result would be as follows: At the outset, plaintiff wanted paid his back taxes and interest, in the sum of $1,005.38. He has a 7,000-dollar mortgage on a quarter-section of land which was worth on March 1, 1936, from $11,000 to $11,500. His share of the rents was $3,896.24. On March 1, 1936, taking into consideration the value of the land which plaintiff would receive for his mortgage, crediting him with the amount of $1,661.74 for back taxes, interest and water maintenance, and giving him the net rent of $2,234.50, he would have approximately $4,000 more than the indebtedness against the land.

In view of the evidence, we believe that the oral contract made contemporaneously with the execution and delivery of the written agreements constituted a condition upon which the performance of the written contract or agreement was to depend. The rule is announced in *Norman v. Waite*, 30 Neb. 302, 46 N. W. 639, as follows: "The existence of a written contract or instrument, duly executed between the parties to an action and delivered, does not prevent the party apparently bound thereby from pleading and proving that contemporaneously with the execution and delivery of such contract or instrument the parties had entered into a distinct oral agreement which constitutes a condition on which the performance of the written contract or agreement is to depend." This holding was followed in *Exchange Bank v. Clay Center State Bank*, 91 Neb. 835, 137 N. W. 845. See, also, *Davis v. Sterns*, 85 Neb. 121, 122 N. W. 672.

And in *Seminole Bond & Mortgage Co. v. Investors Realty Co.*, 127 Neb. 193, 254 N. W. 732, we held: "Parol evidence is inadmissible to vary the terms of a written agreement, complete on its face, but such evidence may be received to show that a written obligation has been dis-

charged in accordance with the terms of a contemporaneous parol agreement, when such parol agreement was a condition precedent upon which the written obligation was executed."

Plaintiff cites several cases on the question of the admissibility of parol evidence to prove a collateral or contemporaneous oral agreement, all of which are the law in this state. In *Weidenfeld v. Olson,* 132 Neb. 303, 271 N. W. 806, we held: "Parol evidence is inadmissible to prove a collateral or contemporaneous oral agreement to vary or contradict the terms of a written lease, which, upon inspection, appears to be a complete contract, embracing all the particulars necessary to make a perfect agreement and designed to express the whole arrangement between the parties." And to the same effect is *Spiegal & Son v. Alpirn,* 107 Neb. 233, 185 N. W. 415. In the latter case it was said (p. 245) : "The test which most of the courts have applied to determine whether parol evidence is admissible to prove a collateral agreement is whether or not the writing appears upon inspection to be a complete contract, embracing all the particulars necessary to make a perfect agreement and designed to express the whole arrangement between the parties, and whether or not the parol evidence is consistent with, and not contradictory of, the written instrument."

Construing the three written instruments together, and upon an inspection of them, we do not feel that they embody the complete contract between the parties; neither do they contain all the particulars necessary to make a perfect agreement, and they do not, taken as a whole, express the whole arrangement between the plaintiff and defendants. From all the evidence and the circumstances, we believe that the parol testimony was admissible.

The reconveyance agreement is indefinite and uncertain as to the length of time the mortgage was to run and the rate of interest it was to bear. We are convinced that the relationship of creditor and debtor existed as between the plaintiff and defendants. Therefore, the relief as prayed

by plaintiff is denied. In view of the relationship of creditor and debtor so established, and as disclosed by the record, the defendants are entitled to have credited on their indebtedness to the plaintiff the sum paid to plaintiff as rent in the amount of $3,896.24, and said amount for rents is to be credited as follows: (1) $1,005.38 delinquent taxes and interest to September 17, 1932; (2) 5 per cent. interest on $7,000 from September 17, 1932, to date of settlement; (3) taxes and water maintenance paid by plaintiff subsequent to September 17, 1932, to date of settlement; (4) any amount of said rents remaining over and above such amounts thereof to be credited on the original 7,000-dollar indebtedness. The remaining amount is due plaintiff for which he has an equitable lien on the real estate of the defendants and an adequate equitable remedy provided by law. Without prejudice to plaintiff to enforce said lien, the judgment of the district court is

REVERSED.