MARY PAVEL, APPELLANT, V. WINIFRED GOEHNER ET AL., APPELLEES.

31 N. W. 2d 219

Filed March 3, 1948.    No. 32337.

*McKillip, Barth & Blevens,* for appellant.

*Harry L. Norval,* for appellees.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and LIGHTNER, District Judge.

WENKE, J.

Mary Pavel brought this action in the district court for Seward County against Winifred Goehner and Fred W. Goehner. The purpose of the action is to permit plaintiff to redeem the lands described in her petition in accordance with the terms of an alleged oral agreement which she claims was entered into at the time she and her husband executed and delivered a deed for the premises to T. L. Norval in consideration of their mortgage debt thereon to him. From a decree in favor of the defendants, her motion for new trial having been overruled, the plaintiff appeals.

The action being in its nature equitable is reviewed here de novo. Such an agreement may be enforced, if established (see Morrow v. Jones, 41 Neb. 867, 60 N. W. 369, and Johnson v. Shuler, 134 Neb. 25, 277 N. W. 807), but it must be established by clear, satisfactory, and convincing evidence (see Butler v. Peterson, on rehearing, 79 Neb. 715, 116 N. W. 515; O'Hanlon v. Barry, 87 Neb. 522, 127 N. W. 860; Cox v. Young, 109 Neb. 472, 191 N. W. 647; Anderson v. Lincoln Joint Stock Land Bank, 131 Neb. 150, 267 N. W. 355; and Lintz v. Apking, 145 Neb. 714, 18 N. W. 2d 55).

In order to clarify the discussion and simplify the reference to them in the opinion, it will be best to set out the relationship of the parties to this action and those referred to in the record and the manner of refer-

ring to them herein. Mary Pavel, who will be referred to as the plaintiff, is a widow, her husband, John A. Pavel, having died in 1943. They will be referred to as the Pavels. Joseph L. Pavel is their son and will be referred to as such. T. L. Norval and Ben F. Norval, who is the same person as Ben Norval or B. F. Norval, are brothers. T. L. Norval died intestate on February 9, 1942, and his daughter, the defendant Winifred Goehner, was his sole and only heir at law. She is the wife of the defendant Fred W. Goehner.

The Pavels were farmers living in Seward County and in 1905 they became the owners of the east half of Section 22, Township 12 North, Range 3 East, of the 6th P. M., in Seward County, Nebraska, and occupied it as their home. This is the land which is here involved. Commencing in 1915 there began a series of mortgages on said premises to T. L. Norval which ultimately resulted in there being an indebtedness on said premises, as of December 23, 1939, in the sum of $14,000 delinquent principal, over $2,200 delinquent interest, and unpaid delinquent taxes for the years 1936, 1937, and 1938. In consideration thereof, although the deed recites only $15,000, the Pavels deeded this land to T. L. Norval by warranty deed dated December 23, 1939. Subsequently, on December 29, 1939, and in accordance with the desires of the Pavels, the son was permitted to farm the place and a one-year lease was entered into by T. L. Norval, through his agent Ben F. Norval, with the son, being from March 1, 1940, to March 1, 1941. This lease provided for rent as follows: $60 cash, one-third of the small grain, and two-fifths of the corn. No new written lease was ever entered into but the son was permitted to occupy the premises on the basis of a tenancy from year to year. He paid the rent for the first two years to Ben F. Norval, who was the agent of T. L. Norval, and after T. L. Norval's death it was paid to Fred W. Goehner, who became the administrator of the T. L. Norval estate. The administrator of the T. L.

Norval estate released the mortgages on this land by marginal releases as of March 2, 1945. The defendant Winifred Goehner is the owner of said premises by reason of being the sole and only heir at law of T. L. Norval, deceased, who died intestate.

Plaintiff testified that she went with her husband to the office of the Norvals in Seward and there Ben F. Norval said they would have to foreclose the place; that they then executed and delivered the deed for the premises to T. L. Norval in full satisfaction of their mortgage indebtedness to him. However, although she is not certain of the exact terms thereof, plaintiff testified that before she signed the deed she demanded that they, the Pavels, have the right to take back the land at any time within 10 years and that she would not sign the deed unless such rights were granted; that Ben F. Norval agreed thereto; and that she would not have signed the deed had he not done so. She also testified that the notes and mortgages were not returned to them at the time the deed was given, nor at any time since.

Ben F. Norval, who handled the matter for his brother, in testifying for the defendants admitted that he had previously told John A. Pavel that if he could not pay the delinquencies on the mortgages that they would have to foreclose. However, he further testified that on the occasion here involved that the Pavels came in on their own account and said they wanted to get rid of their indebtedness. He further testified that the deed, although reciting only a consideration of $15,000 which he thought was probably the value of the land at that time, was in full satisfaction of the mortgage debt and the delinquencies thereon; that the Pavels, particularly the plaintiff, mentioned something about wanting to be able to redeem the property but that he refused to consider such a proposition and that he told them he would not make such an agreement and would not take the deed unless it was in full settlement without any

further rights in the Pavels; that the Pavels agreed thereto and that the deed was then executed and delivered in full satisfaction of the indebtedness; and that he thereupon canceled the mortgage notes and gave them, and the mortgages, to the Pavels.

After the deed was given the Pavels, including the son, continued to live on the land pursuant to the lease hereinbefore referred to, the son farming the land. The plaintiff testified that it was her thought that under the terms of the agreement to redeem that she was entitled to have the rents applied thereto. In this regard it is significant that neither she, nor her son, kept any accounting thereof.

The son testified that he talked to the defendant Fred W. Goehner about his mother wanting to redeem the place; that he did so the first time shortly before the first of March 1945; and that the conversation took place in the office of Goehner in the latter's store in Seward. This would be shortly before Goehner, as administrator, released the mortgages. He testified Goehner told him he would let him know when he could redeem it. He said he talked to him again about a year later at the same place and that Goehner gave him the same answer. This later conversation was about two weeks before he was served with notice that he would have to vacate the premises on March 1, 1947. This notice was served on May 25, 1946.

The defendant Fred W. Goehner testified that the son talked to him in the latter part of March 1945, and also at a later date, about wanting to buy the place but that he never talked of redeeming it but said that his folks wanted him to buy it back, but that he never agreed that the son could have it.

The son further testified that shortly after he was served with notice to vacate the place he talked with Ben F. Norval about redeeming the premises and that Norval asked him if he had the money. Joe Divis testified that he was with the son on that occasion and over-

heard the conversation. He testified that the son told Ben F. Norval that he had a right to redeem and that his mother was ready to do so and that Norval did not say whether there was or was not any such agreement but just asked him if he had the money.

Ben F. Norval testified that he talked with the son on two occasions and that the son spoke of his mother's right to redeem the land, admitted that he did ask the son where he could get that much money, and that the son told him he could get it but said he told the son that his mother had no such right as there never was such an agreement.

From what has been said it is apparent that as to the issues of whether or not there was, in fact, such an agreement as plaintiff claims the evidence is in conflict and the rule stated in Fisher v. Standard Investment Co., 145 Neb. 80, 15 N. W. 2d 355, is applicable. The rule therein stated is as follows: "While the law requires this court, in determining an appeal in an equity action involving questions of fact, to reach an independent conclusion without reference to the findings of the district court, this court will, in determining the weight of the evidence, where there is an irreconcilable conflict therein on a material issue, consider the fact that the trial court observed the witnesses and their manner of testifying." From the record we come to the same conclusion as the trial court, that is, that no such agreement was ever made. In fact, it is evident from the record that the idea of redeeming the property never occurred to these parties until after the son was served with notice to vacate.

We have come to the conclusion that the decree of the trial court should be and is affirmed.

AFFIRMED.