EXCHANGE BANK OF ONG, APPELLEE, V. CLAY CENTER
STATE BANK, APPELLANT.

FILED SEPTEMBER 28, 1912.    No. 16,754.

**Evidence: PAROL EVIDENCE: ADMISSIBILITY TO VARY WRITING.** "The
existence of a~written contract or instrument, duly executed be
tween the parties to an action and delivered, does not prevent
the party apparently bound thereby from pleading and proving
that contemporaneously with the execution and delivery of such
contract or instrument the parties had entered into a distinct oral
agreement which constitutes a condition on which the perform-
ance of the written contract or agreement is to depend." *Norman
v. Waite*, 30 Neb. 302.

APPEAL from the district court for Clay county:
LESLIE G. HURD, JUDGE. *Reversed.*

*Ambrose C. Epperson* and *W. G. Hastings,* for appel-
lant.

*S. W. Christy, L. E. Cottle* and *Samuel Rinaker, contra.*

FAWCETT, J.

This action was instituted in the district court for
Clay county to recover a balance claimed by plaintiff to
be due to it upon an open deposit account subject to check,
which it had with defendant, amounting, as alleged, to
$6,112.91.   The defendant admitted liability and offered
to confess judgment for $819.86, which offer was refused.
After both sides had rested, the court directed a verdict
in favor of plaintiff for $6,121.08, and entered judgment
thereon.   Defendant appeals.

Plaintiff and defendant are banking institutions or-
ganized under the laws of this state, and during the times
in controversy were closely allied in business transactions;
the cashier and managing officer of plaintiff, J. O. Walker,
being a member of the board of directors and at least
nominal president of defendant.   In February, 1907,

Walker addressed to the cashier and managing officer of defendant the following letter: "I have a few excess loans and I may want to send you some of them, until after we are examined I don't want any excess loans, when examiner is here, and he may come most any day and may not for a month or so, now I wish to know if you can handle them I will charge your account, and you give us credit for the amount, this way it will throw the balance in our favor, and you would treat our account then the same as a deposit account, subject to check so in that way it would not show due to other banks, but would be included in your subject to check account, but this would cut your cash reserve down the amount that we owe you but you have a good reserve, so it would not make much difference, or we might exchange some notes if you did not wish it this way you can let me know and I will send them over to you, if agreeable and after the examination you can return again to us, I want to carry the loans, but can't now as we will be examined soon and they will be excess loans, so you will see the point I am trying to make. I will also compute the interest. I remember what we talked of at Schwab's sale but had forgot it, so will go over this as soon as possible and count up the extra 1% to Feb'y 1st, or Jan'y 1st, and from then on 3% as agreed to. Hope you are O. K., I am feeling good except a bad cold I can't get over, let me hear from you at once and oblige, I am yours truly, J. O. Walker, Cashier." The evidence shows that, in accordance with that letter, Walker sent to defendant a promissory note dated September 20, 1906, for $5,000, due six months after date, payable to plaintiff bank, and signed by C. W. McMaster and E. McCann. When that note was mailed to defendant it was indorsed "without recourse." When received by defendant it was placed to the credit of plaintiff upon defendant's books. On May 23, 1907, Walker addressed another letter to the cashier of defendant, in which he uses this language: "I will send you a written guarantee as to notes so you can file same away

as this was to be done, as per our talk when the notes were forwarded or turned to you." The testimony of the cashier and assistant cashier of defendant bank shows that the words quoted from that letter referred to an agreement they had with Walker as cashier of plaintiff at the time they took the McMaster note, with others, that "they would guarantee the payment of the note;" that it was to be put in writing; and that "they would send" a written guarantee as to the notes. No written guarantee was ever sent. As the note in controversy was about to mature on March 20, 1907, it was sent by defendant to plaintiff for collection and credit. Instead of collecting it, Walker took a six months' renewal of the note, payable to plaintiff bank, indorsed it as before, sent it to defendant, and notified defendant that plaintiff bank had credited defendant bank with the interest. When the note matured again in September, 1907, the same course was pursued. Like action was taken when it again matured in March, 1908. When it was about to mature again in September, 1908, defendant sent the note to plaintiff as before, with this letter: "J. O. Walker, Cashier, Ong, Nebr. Dear Sir: Inclosed herewith we hand you for collection No. 1679 $5,000.00 which will be due September 20th, 1908. Please credit our account with the amount together with the interest when collected, and advise us of the amount. We are having lots of call for money for short time and hope these people will settle promptly. Yours very truly, F. T. Swanson, Cashier." The note was not paid, nor any renewal taken. Some time during that fall Mr. Walker died. On December 23, 1908, defendant's cashier wrote the following letter to plaintiff's new cashier: "Grace L. Walker, Cashier, Ong, Nebraska. Dear Miss Walker: We have this day charged the Exchange Bank of Ong with $5,300.00 being for principal and interest on the C. W. McMaster note, $5,000.00 being principal and $300.00 being interest from March 20th, to date. This is in accordance with the guarantee given us by J. O. Walker as cashier of the Exchange Bank of

Ong at the time this note together with some others were transferred here. This leaves a balance of $610.91 due the Exchange Bank of Ong as shown by our books." On the next day Miss Walker replied as follows: "Mr. F. T. Swanson, Cashier, Clay Center, Nebr. Dear Sir: Replying to your letter of the 23d inst., will say that we herewith return the C. W. McMaster $5,000 note which we held for collection. We do not see at this time any prospect for collecting same, and therefore return it to you. You say in your letter you have charged our account for said note and interest. This note was never owned by this bank, it was never run on our books, and you received it without recourse. Please credit our account again, for we cannot pay the note. Very truly yours, Grace L. Walker, Cashier."

The only matter in controversy here is this note. Upon the trial the district court excluded the testimony offered by defendant in support of its alleged contemporaneous oral agreement that plaintiff would guarantee the payment of the note in controversy, on the ground that it tended to vary the terms of a written instrument; and it is urged by plaintiff here that, "under the terms of this written indorsement, the defendant, when it purchased the original note and accepted the renewal notes, contracted with the plaintiff that the plaintiff should not be liable thereon or for the payment thereof. This written indorsement cannot be contradicted, varied or explained by evidence resting in parol." This contention is in line with the holding of the district court, but we think the rule in this state is settled adversely to plaintiff's contention. In *Norman v. Waite*, 30 Neb. 302, we held: "The existence of a written contract or instrument, duly executed between the parties to an action and delivered, does not prevent the party apparently bound thereby from pleading and proving that contemporaneously with the execution and delivery of such contract or instrument the parties had entered into a distinct oral agreement which constitutes a condition on which the performance of the

written contract or agreement is to depend." In *Barnett v. Pratt*, 37 Neb. 349, we held: "Further, it is settled by a considerable line of authority that where the execution of a written agreement has been induced upon the faith of an oral stipulation made at the time, but omitted from the written agreement, though not by accident or mistake, parol evidence of the oral stipulation is admissible, although it may add to or contradict the terms of the written instrument." In *Davis v. Sterns*, 85 Neb. 121, we held: "It is not error to submit oral testimony to the jury to show the purpose for which a negotiable promissory note was executed, where such note is sued on by the payee named in the note." The above holdings are reaffirmed and adhered to in *First Nat. Bank v. Burney, ante*, p. 269. The law merchant is not involved. The note had not passed into the hands of an innocent purchaser. This action is between the original parties to the contract, and we think the rule announced in the above cases is now well settled both here and elsewhere. The court erred in excluding the testimony referred to and in directing the verdict.

There would seem to be another good reason to doubt plaintiff's right to recover in this action. In the letter of December 24, 1908, above set out, the cashier of plaintiff says: "This note was never owned by this bank, it was never run on our books." If so, why should plaintiff have any credit for it on defendant's books. The inference is that the McMaster note was a transaction between McMaster and Walker personally, and for that reason it never was run on the books of plaintiff bank. There is no evidence to show that McMaster ever received any money from plaintiff bank for the note. If so, plaintiff has lost nothing by its nonpayment. By its letter of December 24 it repudiates all ownership of it, and it would seem that it should abide by such repudiation. If it never paid McMaster the consideration for the note, and never carried it upon its books, we see no reason why it should demand payment of it. But counsel for defendant say

that the letter does not refer to the note dated March 20, 1907; that it may or may not refer to the note dated September 20, 1906, or to the other notes or some of the other notes which were purchased from plaintiff by defendant in February, 1907, the time the McMaster note was purchased; that it may or not refer to still other notes bought by defendant at some other time than February, 1907. This argument is not convincing. The letter is too plain to be misunderstood. It says: *"This* note was never owned by this bank, it was *never* run on our books." This language is used in connection with the McMaster note set out in the letter, and the use of the word "never" clearly shows that the cashier had reference not only to the last renewal note, but to all of its predecessors.

The judgment of the district court court is reversed and the cause remanded for further proceedings.

REVERSED.