## KAPLAN v. AMERICAN COTTON OIL CO.

(Circuit Court of Appeals, Fifth Circuit.
May 6, 1926.)

No. 4544.

1. **Sales ⬌1(1)—Agreement for sale of fertilizer, containing proximate quantity, price, and terms, with description of article sold, held complete, and not mere memorandum.**

Agreement for sale of fertilizer, containing proximate quantity, price, and terms of payment, with description of product sold, *held* not a mere memorandum, but complete in itself, and not ambiguous.

2. **Evidence ⬌397(1).**

Parol testimony is not admissible to alter, vary, or add to written contract, particularly regarding negotiations had before its signing.

3. **Sales ⬌266.**

Contract for sale of fertilizer *held* not to impliedly warrant that fertilizer could be spread through use of drills.

4. **Sales ⬌358(1).**

Where there was no breach of contract for sale of fertilizer by seller, evidence of damage to buyer was inadmissible in action for purchase price.

In Error and Cross-Error to the District Court of the United States for the Western District of Louisiana; Benjamin C. Dawkins, Judge.

Suit by the American Cotton Oil Company against A. Kaplan, wherein defendant set up a claim in reconvention. From the judgment, plaintiff brings error, and defendant brings cross-error. Affirmed·on plaintiff's writ of error, and reversed on defendant's cross-writ.

J. Blanc Monroe, Monte M. Lemann, and Nicholas Callan, all of New Orleans, La. (E. R. Kaufman, of Lake Charles, La., Philip S. Pugh, of Crowley, La., and Monroe & Lemann, of New Orleans, La., on the brief), for plaintiff in error.

Chas. A. McCoy, of Lake Charles, La., and Chas. F. Fletchinger, of New Orleans, La. (Miller, Miller & Fletchinger, of New Orleans, La., and McCoy & Moss, of Lake Charles, La., on the brief), opposed.

Before WALKER and FOSTER, Circuit Judges, and GRUBB, District Judge.

FOSTER, Circuit Judge. In this matter, from the pleadings and facts in the record, the case may be thus stated. The parties will be referred to as they appeared in the District Court. In March, 1923, plaintiff, through its agent, E. K. Huey, entered into an agreement with defendant, who is engaged in large rice-planting operations in Louisiana, to supply him with certain fertilizer during the season, and a memorandum in the following words and figures was made and signed by both of them:

"Farmers' Rice Grower.

"Mixture: 16–0–5 made of 18 per cent. acid phosphate and 50 per cent. sulphate of potash. $27.00 per ton f. o. b. country, in 100-lb. bags. My requirements, minimum, 400 tons. Payable June 15. If not paid then, 6 per cent. interest to December 15. This mixture not to contain over 13 per cent. water. With privilege·of returning unused fertilizer at end of season, paying freight both ways.

"O. K.                         A. Kaplan.
"O. K.                         E. K. Huey."

From March 20th to May 28th, inclusive, plaintiff shipped to defendant 305 tons of the kind of fertilizer covered by the above-noted agreement. At the end of the season defendant returned 56.31 tons of the said fertilizer. Other fertilizers, about which there is no controversy, were also shipped from time to time. After the season's transactions were completed, defendant was indebted to plaintiff in the sum of $8,859.91, according to plaintiff's claim, but declined to pay anything at all. Plaintiff then brought suit. Defendant answered, denying liability on account of certain damages alleged, and set up a claim in reconvention under the Louisiana practice for $10,226.79.

On the trial of the case defendant was allowed to prove, over plaintiff's objection, the substance of a conversation had between Huey, Kaplan, and an employee of Kaplan, just prior to the date of signing the above set out agreement, in the course of which Huey remarked that 13 per cent. moisture would cause no trouble, and that he would guarantee that the fertilizer would not gum the drills and cause trouble in planting when used by the defendant. Defendant was also ·allowed to prove, over plaintiff's objection, certain· items of damages alleged to have been caused by hauling fertilizer returned from the field to the railroad station, the increased cost of other fertilizer bought to replace said fertilizer when it was found to be unsatisfactory, and loss of profits on the sale of fertilizer sold to defendant's tenants, the whole amounting to over $900. Defendant also sought to prove other items of damages alleged to have been caused by employing additional labor to spread the fertilizer used, and for loss of crops on land not cultivated; but this evidence was excluded on objection of plaintiff.

The case went to the jury, and resulted in a verdict for plaintiff for $8,859.91, as prayed for, and for the defendant in reconvention in the sum of $741.18. Defendant sued out a writ of error, and plaintiff sued out a cross-writ. Defendant assigns error to the ruling excluding proof of additional damages, and plaintiff assigns error to the admission of the testimony as to what was said in the conversation had prior to the signing of the written contract.

[1] The District Court was of the opinion that the contract was a mere memorandum, not complete in itself. With this construction of the document we must disagree. In framing the contract, the parties were rather economical in the use of words, as is not unusual in commercial transactions, but doubtless its meaning was clear to them. The document contains all the essential elements of a contract. The proximate quantity, the price and terms of payment, and description of the article sold are all completely and definitely stated, and the document is signed by the parties. The document is not ambiguous.

[2, 3] It is elementary that parol testimony is not admissible to alter or vary or add to a written contract, and this particularly applies to negotiations had before its signing. This is not disputed by counsel for defendant, but the admission of the testimony is sought to be justified, not only on the theory that the document is incomplete and a mere memorandum, but also to show an implied warranty that the fertilizer could be spread through the use of agricultural implements, called drills.

Numerous authorities are cited to sustain this second contention, but in our opinion they have no application. There was an implied warranty, of course, that the fertilizer would in fact fertilize the land; but no objection is made on that score. That the fertilizer could be applied to the land in any particular manner would certainly not be an implied warranty, and, as we hold the contract to be definite and complete, the evidence was not admissible on any theory. The Supreme Court of Louisiana, in a case similar in principle, thus tersely states the rule: "Let the cause of the trouble have been what it may, plaintiff was not responsible for it. He furnished articles of the kind and quality called for by his contract, and his warranty went no further." Dreyfus v. Lourd, 111 La. 22, 35 So. 370. See, also, De Witt v. Berry, 134 U. S. 306, 10 S. Ct. 536, 33 L. Ed. 896.

[4] As there was no breach of contract by the plaintiff, evidence of damage was also inadmissible. It follows that the judgment in favor of plaintiff must be affirmed, and that in favor of defendant in reconvention must be reversed.

Affirmed on writ of error.

Reversed on cross-writ.