OMAHA PRINTING COMPANY, APPELLEE, V. CHARLES E. MACK ET AL., APPELLEES: PAUL MILLS, APPELLANT.

FILED JANUARY 24, 1936. No. 29512.

*R. H. Olmsted,* for appellant.

*Smith & Schall, Gerald M. Vasak, Mapes, Johnson & Maynard* and *N. H. Cornell,* contra.

Heard before GOSS, C. J., ROSE, GOOD, DAY, PAINE and CARTER, JJ., and CHASE, District Judge.

Goss, C. J.

Omaha Printing Company offered a reward of $500 for the apprehension of the murderer of its salesman, Russell Goodwin. The murderer was apprehended and confessed. Thereupon so many parties claimed the reward, or a share of it, that Omaha Printing Company brought a suit in equity interpleading those parties known to it as claimants and deposited the reward in court to be paid to the claimant or claimants equitably entitled to it. After a trial the court decreed as follows:

"That after the payment to plaintiff of its costs of $11.00 that the following defendants be paid the following proportions of the $489.00 balance of said reward: Charles E. Mack, $150.00; Louis H. Stecher, $150.00; Stanley Ondracek, $150.00; Louis Alperstedt, Edward Dewey Dau and Elmer Schwab, each $13.00.

"That the defendants Paul Mills, Hans F. Boll and Wesley Pace are not entitled to any part of said reward."

Paul Mills, one of defendants, appealed. While the case is for review *de novo,* the other defendants appear satisfied as to the awards made in the district court.

The inquiry is as to whether Paul Mills is equitably entitled to the reward or any part of it.

Paul Mills, residing at Lincoln, and general agent for an Iowa insurance company, was in Oakland, Nebraska, on business, September 7, 1934, intending to stay there over night. He read in an Omaha evening paper an account of Goodwin's murder, on the morning of September 6, a description of the man suspected, the fact that he had abandoned Goodwin's car when it ran out of gas, and was going east and north on foot. So he ate an early supper and left Oakland for Hooper, in the hope of finding the accused. When about two miles north of Hooper he passed the suspect and intended to offer him a ride but changed his mind when he saw that the party, who proved later to be Malmberg, the murderer, had his hand in his coat pocket, evidently carrying a gun. Mills drove to a filling station at the north edge of Hooper and engaged Wesley Pace, the attend-

ant, to telephone to Mack, the city marshal, the fact that the suspect was coming from the north and his description and that Mills would go to the office of Meyer, the justice of the peace. Mills then drove down-town, found Meyer, and went with him to Meyer's office in the city hall. In a few minutes Charles Mack, the marshal, came, told him Pace had telephoned him the description of the suspect, asked and received from Mills a further description, left and returned shortly afterward with Malmberg. He had taken a gun from Malmberg and Mills asked for it and examined it. Pace and Meyer corroborate Mills as to the testimony of Mills concerning his part in getting notice to the marshal. Mills was not present at the arrest.

It is to be noted that the reward was not offered for the arrest, or for the arrest and conviction, but for the apprehension of the murderer.

*Janvrin v. Exeter,* 48 N. H. 83, is cited by appellant. There, however, the reward was offered by the town under a state statute for the "apprehension and securing of a person charged with a capital or other high crime." In the opinion it is said: "It is obvious that two or more persons may join in detecting and apprehending an offender, and if they do so, they are jointly entitled to the reward, and should join in the suit. It is like other cases of joint service, and is governed by the same rules. If, indeed, sundry persons separately undertake to secure a culprit, and one without concert with others succeeds in apprehending him, he alone is entitled to the reward, and alone should sue. There may be cases where it might be difficult to determine whether certain persons did act in concert or not, but this cannot affect the rule that those who have jointly performed the service should join in the suit."

The foregoing was quoted with approval in *Elkhorn Valley Lodge v. Hudson,* 59 Neb. 672, 81 N. W. 859. In that case many persons were engaged in the search for a dead body for the recovery of which a reward was offered. One acting on his own account, independent of others and for the purpose of securing the reward, found the missing body.

The district court found that this party was entitled to the whole of the reward, but said: "In a controversy over the right to such reward, or to a portion of it, whether a person acted independently of others and on his individual account, or whether the discovery was the result of the joint action and combined efforts of several, is a question of fact to be tried as all other controverted questions of fact." That was a law case and, while the facts are somewhat different from those in the instant case, the principles are quite applicable here.

Stanley Ondracek, the Schuyler marshal, was of great service in bringing about the apprehension of Malmberg. The morning Goodwin was shot he drove to the place where he was shot and his car taken from him; he learned that Goodwin had been taken to a hospital in Columbus and proceeded there, where he secured from Goodwin, who was still conscious, a description of the assassin; he telephoned the facts to various sheriffs, to radio stations and to newspapers; he drove that day and the next in search of Malmberg and on his track; his prompt and intelligent action was responsible for the apprehension of Malmberg as much as that of any of the parties even though he was not in at the arrest. It was responsible for exciting the interest and changing the plans of Mills.

The action of Mills brought notice to Stanley Mack that Malmberg was in the immediate neighborhood and caused him to go out and arrest him. Stecher, too, had notice of the description of Malmberg and was looking for the marshal to take him into custody. Mack was aided by Stecher and his associates and arrested Malmberg a few minutes after he had connected up with Mills and secured a further description of Malmberg.

Can it be said that Mills was not acting in concert with Mack in the apprehension of the prisoner? Or that Ondracek was not acting in fact in concert with him and Stecher and the rest and primarily responsible for the publication of the description of Malmberg which led to his apprehension?. The trial court awarded. Ondracek a large share

though he was not present at the arrest. The facts are so different from the finding of a dead body in the case of *Elk-horn Valley Lodge v. Hudson, supra,* that we think all parties who helped to publish the information, to carry it to the arresting officer and who participated immediately in the arrest ought to share in the reward. The decree of the trial court distributed it among all of these but Mills. We think this did not do equity as to Mills and that he ought not to have been omitted entirely from the award. Of course the fact that he apparently lost active interest after contacting the marshal and did not attend the marshal when the marshal went out to find and take Malmberg into custody does not put him on an equality with Stecher, who likewise identified Malmberg on the road, who kept track of him, pointed him out to Mack and was present when Mack made the arrest; nor with Mack, who was the arresting officer; nor with Ondracek, who was initially responsible for making the identification of Malmberg possible. It seems that he was entitled to about half as much of the reward as each of the three actors above named—that is, $75.

The judgment of the district court is reversed, with directions to so modify it as to distribute the $489 as follows: To Alperstedt, Dau and Schwab, each $13; to Mills $75 and his taxable costs on appeal; after the payment of all taxable costs on appeal to the parties entitled thereto, and such other costs as may be taxed in the district court, the balance to be divided equally among Mack, Stecher and Ondracek.

REVERSED.