LOCAL TRADEMARKS, INC., a corporation, Plaintiff,

v.

Milton V. GRANTHAM, doing business as Chadron Floral Shop and The Floral Nook, Defendant.

No. 157.

United States District Court
D. Nebraska.

Dec. 31, 1957.

George H. Thompson and Robert H. Peterson, Omaha, Neb., for plaintiff.

Charles A. Fisher, Chadron, Neb., for defendant.

DELEHANT, District Judge (Retired, serving by assignment).

Relying for jurisdiction upon Title 17 U.S.C. § 112 and Title 28 U.S.C. § 1338, plaintiff brought this action, as the alleged owner of a United States copyright, to obtain as against defendant, on account of alleged infringement, a judgment for injunction and other equitable relief, damages, costs and counsel fee. The complaint is in six counts, each of which alleges against the defendant a separate act constituting an asserted infringement of plaintiff's copyright. To that extent the several counts are separate and distinct. But in other respects the allegations of all of the counts are essentially the same.

In all counts of the complaint it is alleged that plaintiff is a New York corporation, engaged in the business of promotion by means of selling to people engaged in various businesses, cuts, mats and reading matter used for the purpose of inserting advertisements in newspapers and periodicals; and that defendant, an individual, is engaged in business

as a retail florist under the trade name of "Chadron Floral Shop" in Chadron, in Dawes County, Nebraska, and separately under the trade name of "The Floral Nook" in Alliance, in Box Butte County, Nebraska, and has his place of residence in Chadron. Then, step by step, each count alleges (a) plaintiff's composition, writing and origination of a book or pamphlet containing cuts and reading matter to which was attributed the title "Miss Flora Series," and plaintiff's conception, invention and ownership of such book or pamphlet; (b) the inclusion in such book or pamphlet of a series of cuts or prints containing figures designed to attract public attention through insertion in advertisements inviting consideration of merchandise for sale by advertisers; (c) plaintiff's procurement of a copyright, under Title 17 U.S.C. § 1 et seq. covering such "Miss Flora Series"; (d) its registration of its copyright of the "Miss Flora Series," and each portion thereof, and especially that portion thereof identified as "Volume 10," of which "Miss Flora Series" Volume 10, a copy is annexed to the complaint; and (e) the status at all times material of Alliance Neb. Daily Times Herald as a newspaper published in Alliance, Nebraska, with a circulation of 3,447 copies. Beyond these allegations common to all of the counts, each count separately alleges that defendant, with full knowledge of plaintiff's rights and of the foregoing copyright, did on a date specified in the count publish and cause to be published in the newspaper just identified an advertisement (each of which differs from each and all of the others), which was taken and copied from a portion of plaintiff's copyrighted pamphlet "Miss Flora Series" Volume 10, of each of which advertisements so published a copy is attached to the complaint, and threatened to continue such publication, and others also taken from the copyrighted pamphlet in the newspaper herein mentioned, and in other newspapers; that such publication was and is without the consent, or authority of, and after warning against such publication by, the plaintiff and caused, and threatened to continue to cause, great injury and damage to plaintiff irreparable in character and not adequately compensable.

Count I alleges the publication on September 13, 1951 of an advertisement copied as Exhibit "C". Count II alleges the publication on September 20, 1951 of an advertisement copied as Exhibit "D". Count III alleges the publication on September 27, 1951 of an advertisement copied as Exhibit "E". Count IV alleges the publication on October 4, 1951 of an advertisement copied as Exhibit "F". Count V alleges the publication on October 11, 1951 of an advertisement copied as Exhibit "G". And Count VI alleges the publication on October 18, 1951 of an advertisement copied as Exhibit "H". Each of those exhibits is a separate and distinct advertisement directing attention to, and designed to support, the business of The Flower Nook, which, was located in Alliance, Nebraska, not in Chadron, from which Alliance is distant about fifty-nine miles. As indicated above, the two cities are located in different counties.

By way of answer defendant, first, denied every allegation of the complaint; secondly, alleged:

"that the defendant Milton V. Grantham entered into an oral agreement with the Plaintiff for the publication of certain advertising in Alliance and Chadron, Nebraska, and paid the Plaintiff and its agent for the same. That the damages now claimed by the Plaintiff is for said publication that have been paid for by the Defendant.";

thirdly, alleged his return to plaintiff at its request long before the institution of suit of all of the cuts and mats of the "Miss Flora Series, Vol. 10", and his want of possession or control of any of such cuts or mats; and fourthly, denied specifically that plaintiff sustained any damage or was entitled to any relief on account of any matter set out in its complaint.

The issues having thus been formulated, the court ordered, and there was held, a pretrial conference, of which a report was timely prepared by the judge, served

upon counsel, and filed. Notwithstanding the report's express allowance of the right to except to its accuracy, no such exception was taken. Among the engagements made during the conference were three which are fairly reflected in the following language taken from Section III of the report:

"(a) Upon request, counsel for the defendant agreed that on the trial the publication of the six advertisements by the defendant, as alleged in the complaint, will be admitted without proof.

"(b) It was stipulated and agreed that the plaintiff's alleged copyright was duly issued and at all material times the plaintiff was and is the owner thereof.

"(c) It was agreed that upon the trial the original express receipt showing the shipment and delivery of the mats for printing copies of the advertising alleged in the complaint will be received without objection or foundation."

The express receipt just mentioned is, and even before the holding of the pretrial conference had been, incorporated as an exhibit in a deposition of William P. Schweickert, vice-president of plaintiff, who identified the mats for printing copies as being included in the material shipped to defendant under such receipt.

After the taking of Schweickert's deposition, and the holding of the pretrial conference, the parties entered into a written stipulation, of which, with the omission of the caption and signatures, the following is a copy:

"It is hereby stipulated and agreed that the following exhibits number 1 through 10, and consisting of No. 1, original contract, No. 2, letter from plaintiff to Chadron Floral Shop, dated July 24th, 1951, No. 3, letter from plaintiff to Chadron Floral Shop, dated September 12th, 1951, No. 4, Letter from Defendant to plaintiff dated September 21st, 1951, No. 5, copy of letter from plaintiff to Chadron Floral Shop, dated September 27th, 1951, No. 6, copy of letter from plaintiff to Chadron Floral Shop, dated October 10th, 1951, No. 7, letter from Milton V. Grantham to plaintiff, dated October 20th, 1951, No. 8, Letter from Louis Filedman, counsel for plaintiff to defendant, dated December 3, 1951, No. 9, copy of letter from defendant to plaintiff, dated December 10th, 1951, No. 10, letter from Gantz & Williams, attorneys at Alliance, Nebraska, to the plaintiff, shall be admitted in evidence wihtout foundation.

"It is further stipulated and agreed, that the deposition of defendant Milton V. Grantham, may be taken on written interrogatories, and that the case may then be submitted to the court without, argument, on the pleadings the exhibits attached hereto Nos. 1 to 10, and the depositions."

The exhibits mentioned, supra were duly attached to the stipulation.

Some delay having ensued in the taking of defendant's deposition in accordance with the stipulation, plaintiff served and filed a motion for orders (a) limiting the time within which such deposition might be taken, and (b) directing that the court "decide the issues based upon the pleadings and the evidence now before him and to enter a judgment as prayed for in plaintiff's petition." The court promptly declined summarily to enter the orders thus prayed for, but did enter an order requiring defendant to show cause by a specified date:

"why the court should not enter an order limiting the time within which defendant may take the deposition of defendant Milton V. Grantham by written interrogatories, as stipulated by the parties on January 21, 1957, and a further order directing that the issues in this case be forthwith decided upon the pleadings and the evidence now before the court, inclusive of such depositions if they be taken timely."

But even before the order last mentioned was made, the defendant's deposition had been taken; and a transcript of it was filed under even date with the order.

Shortly thereafter, defendants' counsel, replying to a letter of inquiry to him directed by the judge, wrote and transmitted to the judge a letter, of the body of which the following is a copy:

"This will acknowledge receipt of your letter of April 5th, 1957, relative to the question whether it was necessary to make any response to the order to show cause. I agree that your letter covers the matter and I will make no further showing other than the deposition and of course under our stipulation the case is as far as we are concerned, that is to say my client has finally submitted for your consideration.

"I have been out of Chadron since the 7th of April and for that reason have not replied to your letter in this regard sooner."

Upon receipt of that letter, the court entered an order by which it was provided, among other things:

"That this cause be taken and held to be submitted upon the pleadings and the evidence now before the court (inclusive of such deposition through interrogatories) and be decided and determined by the court upon the basis of such material.

Thus, the action has been submitted for final ruling upon its merits, on the basis of the pleadings, inclusive of the report of pretrial conference and the stipulations, and the depositions of Schweickert and defendant, Milton V. Grantham, the latter having been taken through written interrogatories.

The facts as found by the court will first be set out. It may be understood that the court finds that plaintiff is a New York corporation with its principal office in New York City, and engaged in the business identified in its complaint. Similarly, defendant is an individual citizen of Nebraska, a resident of Chadron therein and, at all material times, was engaged in business as a retail florist. He then operated separate businesses, one under the name of "Chadron Floral Shop" at Chadron, in Dawes County, Nebraska, the other under the name of "The Flower Nook" at Alliance, in Box Butte County, Nebraska. Those two cities are the county seats of their respective counties which adjoin each other, and the distance between the cities is about fifty-nine miles. Crawford, Nebraska is located in Dawes County and is between twenty and thirty miles westerly from Chadron.

Prior to any transaction involved in this litigation, plaintiff had composed, written, prepared and originated a book or pamphlet containing printed cuts and reading matter, to which it attributed the name or title "Miss Flora Series." Plaintiff conceived, invented and owned such book or pamphlet. The book or pamphlet included, and consisted of, a series of cuts or prints of figures of persons and things, and printed material appropriate thereto, designed to attract public attention through insertion in advertisements in newspapers or periodicals inviting consideration, by members of the reading public, of merchandise being offered for sale by advertisers under names identified in the published advertising.

Plaintiff, prior to the occurrence of any contact between plaintiff and defendant, had procured, and was the owner of a United States Copyright under Title 17 U.S.C. § 1 et seq., covering the "Miss Flora Series" in its entirety, including those portions thereof which were collected into a smaller pamphlet known as "Miss Flora Series Volume 10." And plaintiff had duly procured the registration of such copyright. Without needless present repetition, the court now observes that it finds that plaintiff had taken each and all of the several steps recited in its complaint looking to its procurement and registration of said copyright. In view of the stipulation of the parties upon the procurement, issuance and ownership of the copyright, it appears to be to no purpose to repeat those steps at this point. It is noted, however, that they are essentially proved in the deposition of the witness Schweickert.

Either on, or within a day or two before, July 21, 1951, a salesman whose name appears to be "Nevill," accompanied by another whose name appears to

be "Selby," representing plaintiff, called upon defendant at Chadron and solicited defendant's purchase from plaintiff of the right to use fifty-two selected mats and related reading matter from the "Miss Flora Series" for one year only. Defendant, upon such solicitation, purchased such right and entered into a contract in writing, in the nature of a signed written order subject to acceptance by plaintiff at New York, which acceptance was promptly made and endorsed upon the contract. A true copy of the contract is attached in a footnote,[1] and made a

1. Following is the copy of the contract:

No. L T 35447 G

ACCEPTED AT NEW YORK, N. Y.
By Local Trademarks, Inc.
Per W. P. Schweikert

LOCAL TRADEMARKS, INC.
87 Madison Avenue, New York, N. Y.

Ship by Express F.O.B. New York, as soon as possible __fifty two__ (52) mats size about __1__ Col. and reading matter, both as you think best, from the copyrighted __Miss Flora__ Series, and $\frac{I}{We}$ hereby agree to pay you at New York, at the rate of __Two__ $\frac{50}{100}$ Dollars per mat, total __one hundred thirty__ $\frac{00}{100}$ Dollars $\left(\$130.\frac{00}{100}\right)$ for $\frac{My}{Our}$ right to use the above mats and reading matter for One Year only from the first of the month following date of shipment in advertising the __Floral__ business in newspapers of and other media of __Chadron__, State of __Nebr__ only.

TERMS OF PAYMENT __Thirty Two__ $\frac{50}{100}$ Dollars ($32.50) By check this date and __Thirty two__ $\frac{50}{100}$ Dollars $\left(\$32\ \frac{50}{100}\right)$ on the quarterly beginning __Nov__ 19 __51__ until the whole account has been paid.

Fifteen days after failure to meet any of the payments due, the whole amount remaining unpaid becomes forthwith due and payable.

It is agreed that, providing there shall be no default by $\frac{me}{us}$ you will not hereafter give any one else any right to use the above mats and reading matter in newspapers of or other media of said place, during said period, nor thereafter until you have offered by mail to sell $\frac{me}{us}$ at the same rate and terms stated above, the right to use additional mats and reading matter of this copyrighted series for the ensuing year.

$\frac{I}{We}$ understand that $\frac{I}{We}$ shall arrange for publication in newspapers and other media and pay the cost of same, and that Local Trademarks, Inc. assumes no responsibility for cost or rate of publication.

Neither party will be held responsible for any provisions or representations not embodied in writing herein, and this contract is not subject to cancellation.

This agreement is subject to your acceptance at New York.

Dated __July 21__ 19 __51__

Name __Chadron Floral Shop__

By __Milton V. Grantham__

Address ——————————

Form Blank    (To prevent errors fill out in ink and write name and address plainly)

part of this memorandum with like effect as if it were set out in detail at this point. For the advice of plaintiff in its filling the order, defendant and the salesman prepared and signed or initialed, as the case may be, an information sheet which defendant delivered to the salesman, along with one of defendant's letterheads used in his Chadron business. These accompanied the order on its transmittal to plaintiff. Also attached to the order, apparently for reference as to form, was a print of a cut evidently made theretofore by plaintiff for Hyde Greenhouse, Parsons, Kansas, mentioned in the information sheet. A copy of the information sheet only is attached hereto as a footnote [2] and made a part hereof.

On August 10, 1951, after acceptance of the order, plaintiff by express shipped to defendant at Chadron mats reflective of the fifty-two cuts for use under the contract, being those cuts constituting the material contained in the pamphlet assembled as "Miss Flora Series Volume 10" with modifications thereof designed to identify defendant in his Chadron business as the advertiser. This shipment reached defendant during August, 1951. It is, therefore, to be noted that, by its terms, the contract, together with the right in it granted, terminated on September 1, 1952, one year from the first day of the month following the date of shipment.

2. This is a copy of the information sheet referred to:

INFORMATION FOR   Miss Flora   SERIES

Information Desired is Signature Nameplate, if Requested:—

(Print carefully name, address, telephone number, etc. in ink)

F.T.D.

SAY IT WITH FLOWERS

FROM

F.T.D.      CHADRON
            FLORAL SHOP
            SEE OUR COMPLETE
            LINE OF GIFTS

Phone 5561                         130 W. 3rd
            CHADRON, Neb.

Same                        1 col Reverse
Style      State specific style of type desired and
As         PASTE SAMPLE HEREON

ATTACH ALSO A SAMPLE LETTER OR BILLHEAD
to confirm details

Indicate column width, depth and whether reverse or plain lettering.

                                              Roll
REMARKS:                                      extra
                                              mat
Hyde
Greenhouse
Parsons, Kan

   Please send 3 extra decals

Bank reference _____   Date July 21, 1951
                                         _____

Interviewed by      J. J. Nevill      O.K.  by      M.V.G.
               _____    _____    _____
                  (Contact Man)                    (Client)
                        &
                  D. B. Selby

Shortly after his receipt of the mats mentioned in the last preceding paragraph, and without any consent or knowledge of, or notice to, plaintiff, defendant caused to be published a separate advertisement of his Alliance, Nebraska, business operated under the name of "The Flower Nook" in the Alliance, Nebraska Daily Times Herald in each of the six of that newspapers' issues published respectively on September 13, 1951, September 20, 1951, September 27, 1951, October 4, 1951, October 11, 1951 and October 18, 1951. Each of those publications was of a distinct, different, and separate advertisement of the business of "The Flower Nook." But each such advertisement, in its format and material and thought, was indubitably copied and taken from one of the advertisements embodied in the copyrighted "Miss Flora Series Volume 10". Thus, each of the advertisements was in size identical with those in the series. Each of the advertisements opened, as did each cut in the series, with the words "Miss Flora" in quotation marks, followed by an exact duplication of a drawing of a person or of persons contained in the corresponding item of the series, after which appears the word "Says," followed by a short interest engaging question taken in exact words from the series, and closing with the words, "say it with flowers from The Flower Nook, 424 Box Butte Phone 12," also taken from the Series, though with the substitution of the name and address of defendant's Alliance business as the advertiser. And, beside the advertiser's address and name in each advertisement, as published in the Alliance newspaper, was a small cut showing a little girl carrying and about to deliver a bouquet of flowers, a feature common to every cut in the Series.

Quite notably, this difference from the Series cuts appears in the advertising in the Alliance paper. Each cut in the Series has printed immediately below the drawing of a person or of persons first above mentioned, the identifying printed legend in small capital letters, "Local Trademarks, Inc.," thereby identifying it as a product of plaintiff. But in each of the six Alliance advertisements that legend is eliminated. To that extent, each mat so used was apparently altered before its impression in such advertising. Then, too, it is not certain that the principal message which "Miss Flora Says" in some of the several mats used in the six Alliance advertising was not occasionally taken from others of the mats. But this is certain, that each such message was taken from one or another of the Series cuts.

Of the essential source of the six challenged advertisements, each in a corresponding mat of the Series, there can be no reasonable doubt.

The newspaper in which the Alliance advertisements were published then had a circulation of 3,447 copies.

Before and at the times of the publication of the advertising in the Alliance newspaper, plaintiff had an arrangement with Alliance Floral Company, a competitor of defendant in his "The Flower Nook" operation, for the use of plaintiff's mat advertising in the Alliance area. That licensee promptly complained to plaintiff of defendant's advertisements in the Alliance paper. In point of fact, those advertisements had commenced as early as August 30, 1951 (although specific complaint and proof herein is limited to the interval between September 13, 1951 and October 18, 1951, both inclusive). By letter, dated September 12, 1951, plaintiff notified defendant of its receipt of a copy of The Alliance Daily Times Herald of August 30, 1951 containing an advertisement within the Series in behalf of "The Flower Nook," and demanded the cessation of such advertising at Alliance. Defendant, on September 21, 1951 wrote to plaintiff acknowledging his receipt of the letter of September 12, 1951 and insisting that he had a right to proceed as he had. And it is fairly concluded that at least five of the advertisements were published after he received the letter of September 12, 1951.

On or very shortly after October 20, 1951 defendant returned to plaintiff the unused cuts of the "Miss Flora Series

Volume 10". And since October 18, 1951 he has not, so far as appears in this record, made any further publications therefrom in Alliance.

By the defendant's use of the foregoing advertisements in the Alliance newspaper, and in behalf of his Alliance business, plaintiff sustained damage in the interruption of its arrangements with The Alliance Floral Company for advertising service in the Alliance area. The amount and extent of such damage are not shown from the evidence in the case.

Defendant, as the court finds, has failed to prove by credible and convincing evidence his allegation of the making between plaintiff and him of the oral agreement set out in his answer. (see verbatim quotation thereof, supra) On the contrary, he received the advertising mats in question solely under and in pursuance of the written agreement set out in full in footnote 1 hereof, whereby his employment of them was expressly limited to his Chadron business only.

Upon the facts as proved, the court reaches the legal conclusions next set forth.

Jurisdiction of the action is not challenged, and unquestionably exists.

In the face of the established fact that the relations between the parties to this action arose entirely out of the written contract shown in footnote 1 hereof, the parol evidence rule prevents defendant from establishing or relying on the asserted contemporaneous oral agreement which he alleges in his answer, and which is explicitly and directly contradictory of the plain unambiguous written understanding. This is equally true whether the parol evidence rule is applied under the law generally applicable throughout the nation, and in the Federal Courts, or according to its administration in the courts of Nebraska. In the former alternative, the law and its source may be referred to quite briefly. In the latter, more extended discussion ought probably to be advanced, in the light of the treatment by Nebraska's Supreme Court of the issue.

The general rule is thus stated textually, 32 C.J.S. Evidence § 851, pp. 784–788:

"It is a well established rule of the common law, which has been embodied in statutes in a number of states, that when any judgment of any court, or any other judicial or official proceeding, or any grant or other disposition of property, or any contract, agreement, or undertaking has been reduced to writing, and is evidenced by a document or series of documents, the contents of such documents cannot be contradicted, altered, added to, or varied by parol or extrinsic evidence. This rule, which is known and referred to as the parol evidence rule, is commonly stated in briefer form and narrower terms to the effect that parol or extrinsic evidence is not admissible to affect, contradict, vary, modify, add to, or subtract from a written instrument. Another common statement set out below in § 901, deals with the most usual application of the rule, namely, its application to contracts. Furthermore, in view of the numerous important limitations of, and exceptions to, the rule, which are stated and discussed in §§ 929–1015 infra, the rule is sometimes stated in terms which exclude the application of some of these limitations and exceptions. As so stated, the rule is that parol evidence is inadmissible to vary, alter, or contradict a written instrument where the instrument is complete, unambiguous, and valid, or there is no fraud, accident, or mistake, or claim or allegation thereof, in respect of the instrument.

\* \* \* \* \* \*

"It has been asserted that the rule under discussion is one of evidence merely. However, according to the modern and better view, the parol evidence rule, as applied to contracts, is a rule, not of evidence or of evidence merely, but of substantive law, it being considered that parol evidence is excluded because the law required the terms of the

agreement to be found in the writing itself and not because of any reasons which ordinarily require the exclusion of evidence, such as some policy against its admission, or its untrustworthiness or lack of probative value. While it has been declared to be of minor importance whether the rule is one of substantive law or of evidence, it would seem to be otherwise where, in accordance with the view that the rule is one of substantive law, it is considered, as it sometimes is, that evidence properly falling within the inhibition of the rule does not become admissible merely no objection is made thereto and that, although it is admitted without objection, it should be disregarded.  *  *  * ”

See also 20 Am.Jur., Title Evidence, section 1099. It is also declared in 32 C.J.S. Evidence § 901, pp. 816 to 823, that:

"The most usual application of the parol evidence rule is with respect to contracts, as to which it is established that, with certain exceptions, considered infra §§ 929–1015, such as fraud, accident, mistake, or ambiguity, parol or extrinsic evidence is not admissible to vary, add to, modify, or contradict the terms or provisions of the written instrument, by showing the intentions of the parties, or their real agreement with reference to the subject matter, to have been different from what is expressed in the writing, for where the parties have deliberately put their engagements into writing in such terms as import a legal obligation, without any uncertainty as to the object or extent of their engagement, all previous or contemporaneous negotiations and agreements with reference to the subject matter are, or are presumed or considered to have been, merged in, or superseded by, the written contract, and the whole engagement of the parties and the extent of their undertaking is conclusively presumed to have been reduced to writing, and, according to the decisions on the subject, the writing being regarded as the only evidence of the agreement. The rule, however, goes even further than this, and it has been established that, where the instrument is free from ambiguity and is in itself susceptible of a clear and sensible construction, parol or extrinsic evidence is not admissible even to explain its meaning or determine the construction of the writing.

"The parol evidence rule has been applied to contracts so as to exclude evidence of negotiations generally, and particularly of those prior to the writing, and, likewise, to exclude evidence relating to communications, oral commitments, conversations or declarations, correspondence, representations or statements, particularly those prior to, or contemporaneous with, the contract, and other utterances.

"The time of performance fixed by the contract cannot be changed by parol or extrinsic evidence."

Applications of the quoted rule by the Federal Courts have been frequent. Among them may be mentioned only suggestively: Frenzer v. Frenzer, 8 Cir., 2 F.2d 218, certiorari denied 269 U.S. 574, 46 S.Ct. 101, 70 L.Ed. 419; Kramer v. Harsch, 3 Cir., 278 F. 860; Kaplan v. American Cotton Oil Company, 5 Cir., 12 F.2d 969; Wells Fargo Bank & Union Trust Company v. McDuffie, 9 Cir., 71 F.2d 720, certiorari denied 293 U.S. 626, 55 S.Ct. 346, 79 L.Ed. 713; Cincinnati Underwriters Agency Company v. Thomas J. Emery Memorial, 6 Cir., 88 F.2d 506, certiorari denied 302 U.S. 696, 58 S.Ct. 14, 82 L.Ed. 537; Indianapolis Glove Company v. United States, 7 Cir., 96 F.2d 816; Obartuch v. Security Mutual Life Insurance Company, 7 Cir., 114 F.2d 873, certiorari denied 312 U.S. 696, 61 S.Ct. 730, 85 L.Ed. 1131; rehearing denied 312 U.S. 716, 61 S.Ct. 824, 85 L.Ed. 1146; and Fisher v. Underwriters at Lloyd's London, 7 Cir., 115 F.2d 641.

The position of the Supreme Court of Nebraska upon the subject of present inquiry has not been historically consistent. Broadly, it has accepted the general parol evidence rule already reflected, and has accorded it the status of a part of the substantive law of the state. Sylvester v. Carpenter Paper Company, 55 Neb. 621, 75 N.W. 1092, 1094; Theno v. National Assurance Corporation, 133 Neb. 618, 276 N.W. 375; Arman v. Structiform Engineering Company, 147 Neb. 658, 24 N.W.2d 723; Hoerger v. City State Bank, 151 Neb. 321, 37 N.W.2d 393. In Sylvester v. Carpenter Paper Company, supra, it was held that, issues of fraud, mistake or ambiguity being eliminated, a written instrument complete in itself was "not only the best evidence, but the only competent evidence" as to the content of the actual contract of the parties to it.

But from time to time, its administration of the rule has faltered and has frequently failed logically to square with its profession of fidelity to the general legal principle. Hard cases much too clearly moved the court, at intervals, to make bad, or at best incoherent, law.

In 1890, in Norman v. Waite, 30 Neb. 302, 46 N.W. 639, the Nebraska court, led thereto by cited language in Michels v. Olmstead, C.C.Mo., 14 F. 219, held that:

"the existence of a written contract or instrument, duly executed, between the parties to an action, and delivered, does not prevent the party apparently bound thereby from pleading and proving that, contemporaneously with the execution and delivery of such contract or instrument, the parties had entered into a distinct oral agreement which constitutes a condition on which the performance of the written contract or agreement is to depend."

And, upon the theory thus advanced, the court reversed a decree of foreclosure and dismissed an action brought, for the foreclosure of a promissory note and mortgage admittedly executed in due form for the reason that the payee and mortgagee (who had assigned to plaintiff) had violated an oral agreement with him made by the mortgagors concurrently with the execution of the mortgage papers, and alleged to have induced such execution. In 1893, in Barnett v. Pratt, 37 Neb. 349, 55 N.W. 1050, it was held in a commissioners' opinion that an oral promise by the purchaser of a business to pay to a third party the debt to him of the business, might be pleaded, sued on, and proved, although the transfer of the business was in writing and made no reference to the debt or its payment. The decision might have been supported entirely—and was partially—on the ground that the written transfer was not, and did not pretend to be, a complete contract but was only a receipt. In Davis v. Sterns, 85 Neb. 121, 122 N.W. 672, upon the recognized theory that it is allowable to show the true consideration for a written instrument, it was held that in a suit on a promissory note between the original parties to it, the actual consideration—and a consequent failure of consideration—might be shown, though such showing was of an oral agreement whereby the note merely evidenced the extent of the interest in terms of money of the note's payee in certain property being purchased by the parties. Then, in 1912 two cases came before the court in which the parol evidence rule was involved. In First National Bank v. Burney, 91 Neb. 269, 136 N.W. 37, the court, upon rehearing, reexamined its earlier ruling in the same case reported in 90 Neb. 432, 133 N.W. 647. In its original opinion it had reversed so much of a judgment as had been made and given in favor of one of two makers of a promissory note because of the trial court's reception in evidence of testimony touching an oral agreement contemporaneous with and contradictory of the note. But at 91 Neb. 269, 136 N.W. 37, in its opinion, on rehearing, it vacated its former action and affirmed the judgment of the lower court upon the authority of the Norman, Barnett and Davis cases, supra. Then, in Exchange Bank of Ong v. Clay Center State Bank, 91 Neb. 835,

137 N.W. 845, upon the authority of the three cases just mentioned, and also First National Bank v. Burney, supra, and speaking again through the same Justice who had written the final Burney opinion, the court went to the extremity of holding that a bank endorsee of a promissory note transferred to it by another bank with a signed endorsement, "without recourse," might fasten liability on the transferring bank by proof that, contemporaneously with the transfer, the transferror had made a parol agreement guaranteeing payment of the debt. (Parenthetically, though probably of no present significance, when the case again reached the Supreme Court of the state, that court affirmed a judgment in favor of the endorsee bank, but upon the altogether different and novel supposition that there was never any genuine transfer of the note between the banks. Exchange Bank of Ong v. Clay Center State Bank, 100 Neb. 278, 159 N.W. 409. That view, interestingly enough, was in flat disregard of, and repugnance to, the allegations of both parties to the action in their pleadings.)

Still later, in Coffman v. Malone, 98 Neb. 819, 154 N.W. 726, 727, L.R.A. 1917B, 258, the court following the earlier authorities already cited, which the opinion characterized as expressing "the settled rule in this state," held that parol evidence was admissible to show that the parties to the suit had mutually agreed that the written contract sued upon was never to be enforced or performed, but was a mere sham executed to influence the conduct of a third person.

In 1921, the subject underwent a careful reexamination in Security Savings Bank v. Rhodes, 107 Neb. 223, 185 N.W. 421, 422, 20 A.L.R. 412. In it the named payee in a promissory note brought suit upon it against its maker, who, answering, admitted its execution, but alleged by way of defense that it was contemporaneously and orally agreed between the maker and payee of the note and a third person that the third person alone should pay the note and, despite its terms, the maker should be under no liability for the debt evidenced by it. The Supreme Court, speaking through Judge Flansburg, affirmed a judgment for plaintiff and against defendant on the pleadings, and held that the answer averred no defense. Reasoning to his conclusion, Justice Flansburg said:

"Although parol evidence may be admissible to show the consideration of a written contract when that consideration is expressed as a recital of a receipt, as distinguished from a complete contractual stipulation (Mattison v. Chicago, R. I. & P. R. Co., 42 Neb. 545, 60 N.W. 925; Spiegal & Son v. Alpirn, 107 Neb. 233, 185 N.W. 415); or to show a want or failure of consideration (Davis v. Sterns, 85 Neb. 121, 122 N.W. 672; Norman v. Waite, 30 Neb. 302, 46 N.W. 639); or to show that an instrument, purporting to be a written contract, is in fact a sham and was never intended as a contract between the parties (Coffman v. Malone, 98 Neb. 819, 154 N. W. 726, and note, L.R.A.1917B, 263); or to show that the written instrument was conditionally delivered upon an oral agreement that it should not take effect as a contract until some condition had happened (Musser v. Musser, 92 Neb. 387, 138 N.W. 599); yet, on the other hand, when a written contract has been unconditionally delivered, in the sense that it is intended to take effect as a legal obligation, a contemporaneous oral agreement, providing that the contract is not to be performed if a certain condition or contingency should occur, cannot be shown, as such proof would have the effect of adding to, varying or contradicting the express terms contained in the writing.

"The rule is succinctly stated in 22 C.J. 1148, § 1540, as follows: 'The rule excluding parol evidence has no place in any inquiry unless the court has before it some ascertained paper beyond question binding and of full effect, and hence parol evidence

is admissible to show conditions relating to the delivery or taking effect of the instrument, as that it shall only become effective upon certain conditions or contingencies, for this is not an oral contradiction or variation of the written instrument, but goes to the very existence of the contract and tends to show that no valid and effective contract ever existed; but evidence is not admissible which, conceding the existence and delivery of the contract or obligation, and that it was at one time effective, seeks to nullify, modify, or change the character of the obligation itself, by showing that it is to cease to be effective or is to have an effect different from that stated therein, upon certain conditions or contingencies, for this does vary or contradict the terms of the writing.' "

Finally, in its opinion the court distinguished Norman v. Waite, supra, upon the probably valid ground that it had to do with an asserted defense of failure of consideration; and it expressly overruled, to the extent of their inconsistency with the Security Savings Bank opinion, Barnett v. Pratt, supra, Exchange Bank of Ong v. Clay Center State Bank, 91 Neb. 835, 137 N.W. 845, and First National Bank v. Burney, 91 Neb. 269, 136 N.W. 37, and, in relation to the case last cited, declared its adherence to the opinion in that action reported in 90 Neb. 432, 133 N.W. 647, supra. That action is now considered fairly to have discredited those earlier opinions.

And the Supreme Court of Nebraska, with only an occasional Homeric nod, has accorded Security Savings Bank v. Rhodes, supra, that consequence. It has been cited and followed—or followed without citation—on several occasions. S. Spiegal & Son v. Alpirn, 107 Neb. 233, 185 N.W. 415 (opinion filed on same day as that in Security Savings Bank case); State ex rel. Davis v. Banking House of A. Castetter, 118 Neb. 231, 224 N.W. 21, in which the late Judge William A. Redick carefully examined and discussed the

earlier rulings of the court; Erwin v. Kuhlman, 130 Neb. 249, 264 N.W. 673; Bartels v. Wade, 130 Neb. 836, 266 N.W. 712; Weidenfeld v. Olson, 132 Neb. 303, 271 N.W. 806; Theno v. National Assurance Corporation, supra; Lefferdink v. Schmutte, 149 Neb. 695, 32 N.W.2d 194; Hoerger v. City State Bank, 151 Neb. 321, 37 N.W.2d 393; Winkelmann v. Luebbe, 151 Neb. 543, 38 N.W.2d 334; and Securities Acceptance Corporation v. Blake, 157 Neb. 848, 62 N.W.2d 132.

And the Court of Appeals, Eighth Circuit, speaking through Judge Sanborn, and with the concurrence of Judge Johnsen, a member of the Nebraska Bar and formerly a Justice of its Supreme Court, in Ford v. Luria Steel and Trading Corporation, 8 Cir., 192 F.2d 880, affirming a ruling by this court through its Chief Judge, the late Judge Donohoe, examined, analyzed and followed Security Savings Bank v. Rhodes, supra, and demonstrated both its clarifying repudiation of earlier rulings of the Nebraska court inconsistent with it, and its own reiteration by that court. It is also of interest that Chief Judge Donohoe had signified a like view in his decision of the Ford-Luria case.

It is admittedly possible to encounter betrayal into confusion by some opinions of the Nebraska Supreme Court subsequent to Security Savings Bank v. Rhodes, supra. But upon careful examination the confusion may be resolved. It seems convenient to recall some of the recent cases in chronological order. Nebraska State Bank v. Howe, 108 Neb. 23, 187 N.W. 77, was decided less than four months after Security Savings Bank v. Rhodes, supra. Holding that the form of endorsement of a past due note is not conclusive but may be explained—or explained away—by parol testimony respecting the real nature of the contract, it is not a considered opinion and fails with any adequacy to examine the antecedent authorities. It may be understood, too, from the circumstance, reflected in the opinion itself, that counsel in the case had manifestly failed to submit it adequately to the court. Doran

v. National Surety Company, 125 Neb. 299, 250 N.W. 82, was an action involving an incomplete written instrument in explanation of the omission in which parol evidence was held to be admissible. In Seminole Bond & Mortgage Company v. Investors' Realty Company, 127 Neb. 193, 254 N.W. 732, the court speaking through a District Judge unquestionably undertook to soften, even to discredit as dictum, the action of Security Savings Bank v. Rhodes, supra, in overruling the Barnett, Burney, 91 Neb. 269, 136 N.W. 37, and Exchange Bank cases, and reaffirming its view expressed in the earlier Burney opinion. But the thinking of the writer of the Seminole opinion, and his tendered distinctions are quite unconvincing. Besides, it is substantially discredited by the several later rulings of the court following Security Savings Bank v. Rhodes, supra, already cited herein, notably by the recent opinion of Justice Boslaugh in Securities Acceptance Corporation v. Blake, supra, which reexamines the course of the pertinent Nebraska decisions and strongly reaffirms the Security Savings Bank opinion. The court in Johnson v. Shuler, 134 Neb. 25, 277 N.W. 807, cited and relied upon Norman v. Waite, supra; Exchange Bank of Ong v. Clay Center State Bank, supra; Davis v. Sterns, supra; and Seminole Bond & Mortgage Company v. Investors' Realty Company, supra. But when the Johnson opinion is carefully examined, it is found really to rest upon the premise that the several writings under scrutiny in it failed to constitute a complete agreement. In First Trust Company v. Anderson, 135 Neb. 397, 281 N. W. 796, the court allowed the reception of oral evidence, in a suit between the parties to a note, to show that one maker was merely an accommodation party to the paper. Perry v. Gross, 155 Neb. 662, 53 N.W.2d 73, is written in such manner that its precise setting may not be understood with assurance. It was a suit to recover the sum of $2,000 theretofore delivered by plaintiff to defendants in pursuance of an oral agreement. Concurrently with such delivery, an agreement in writing was made between the parties, but the opinion does not set it out either verbatim or in substance. So it is quite impossible to determine whether, or to what extent, and in what manner, it dealt with the $2,000 deposit. The plaintiff insisted that the latter deposit was a "distinct" transaction, and the opinion seems to adhere to that view. In the course of its ruling accepting parol evidence regarding the terms on which the $2,000 delivery was made, the writer of the opinion declared the court's allegiance to the parol evidence rule. But without clearly showing the impact on the case of such writing or writings as were involved, it justified the reception and consideration of the parol evidence upon the authority of Norman v. Waite, supra; Exchange Bank of Ong v. Clay Center State Bank, supra; Johnson v. Shuler, supra; Davis v. Sterns, supra; and Seminole Bond and Mortgage Company v. Investors' Realty Company, supra. It conveniently neglected to cite or discuss Security Savings Bank v. Rhodes, supra. It, too, has to be read in association with the later ruling in Securities Acceptance Corporation v. Blake, which is clearly the more adequately considered case, as well as the more recent one.

Seen whole, it is concluded that despite their too protracted wandering in strange places, the decisions of the Nebraska court finally returned to practical fidelity to the parol evidence rule. Through too many years they kept the legal profession in a state of perplexity upon the subject. But they appear fairly to have dispelled the doubt.

The court, therefore, concludes, first, that the alleged oral agreement pleaded in his answer by defendant as a grant by plaintiff of a license to defendant to use plaintiff's copyrighted material in his advertising at Alliance was never made; and, secondly, that such an agreement, if made, as it would necessarily have been, contemporaneously with the written agreement shown at foot-

note 1 may not be allowed to vary or nullify the plain restrictive language of the written instrument.

■ It follows that defendant's use in the six successive Alliance advertisements of the copyrighted material from the "Miss Flora Series, Volume 10" was wholly unauthorized, and that each such use constituted an infringement of plaintiff's copyright, for which plaintiff is entitled to appropriate relief.

It remains to consider what relief should be granted.

■ Plaintiff prays for permanent injunctive relief against defendant's publishing, printing, reprinting, copying, vending or offering for sale any of the cuts, mats, prints, reprints, or any advertisements containing any parts of plaintiff's copyrighted material. It is true that defendant has returned to plaintiff the unused mats of the copyrighted series, and also, that, since the publications in September and October, 1951, several years have elapsed without demonstrated repetition by defendant of his advertising activities at Alliance. Meanwhile, his license to use the material even at Chadron has long since expired. But he seems to continue to assert the correctness of his original position. The court, therefore, considers that it is appropriate to, and will, grant the injunctive relief prayed for. Title 17 U.S.C. §§ 101 and 112.

■ Damages are also demanded. That some damage was by plaintiff sustained in consequence of the six advertisements is demonstrated; but the extent of such damage is not shown. In that situation, within the authority of Title 17 U.S.C., § 101(b), the court has concluded that an award of damages at the rate of $250 on each advertisement, in all $1,500 should be made and given. And judgment will be entered accordingly.

■ The costs of the action will also be taxed against defendant. The court, however, does not include in the taxed costs an award in the way of an attorney's fee. Title 17 U.S.C. § 116. The facts, along with the award in the way of damages already announced, would seem to warrant the conclusion that an allowance in any sum for attorney's fees would be unreasonably burdensome. And evidence is wholly wanting by which the court might understandingly determine the amount, if any, which should be resolved upon as an attorney's fee in the present action.

■ The court, notwithstanding plaintiff's prayer therefor, will make no order in the action for the surrendering up by defendant for destruction of all cuts, mats, and other means of making copies of plaintiff's copyrighted material, which may remain in defendant's possession. That, in appropriate circumstances, such an order may be granted is not doubted. Title 17 U.S.C. § 101(d). But notwithstanding some incompleteness in the proofs upon the point, the court is satisfied that defendant, though unwillingly and somewhat gracelessly, has long since surrendered such material to plaintiff. And an order made now for its surrender and delivery would seem to be purposeless.

Counsel for plaintiff will prepare and submit forthwith to defendant's counsel for examination and approval as to form, or suggested amendment or correction, an order and judgment reflecting the ruling now announced; and, upon approval, will submit it to the court for signature and entry; or upon suggestions of amendment or correction, will submit it to the court on notice for settlement and entry.

The order and judgment will be so prepared as to speak and be effective, not from this date, but from the time of its signature and entry.